BANK OF NORTHERN ILLINOIS, f/k/a First Trust and Savings Bank of Glenview, *et al.*, Plaintiffs-Appellants, v. MARY JANE NUGENT *et al.*, Defendants-Appellees (Donald J. Moyers *et al.*, Defendants).

Second District   No. 2—91—0026

Opinion filed December 24, 1991.

Fitzsimmons, Roberts, Bowen & Paine, of Oak Brook, Jerome J. Roberts, of Fitzsimmons, Roberts, Bowen & Paine, of Chicago, and Michael L. Ralph and Michael M. Melius, both of Richards, Ralph, Eiden, Eckert & O'Donnell, Chartered, of Vernon Hills (J. Michael Fitzsimmons, of counsel), for appellants.

Robert A. Carson, of Gould & Ratner, and Paul W. Carroll, both of Chicago (Kathryn S. Matkov and Edward A. Trio, of counsel), for appellee Estate of Edward W. Nugent, Jr.

Roger Littman, of Querrey & Harrow, Ltd., of Chicago (Michael Resis, of counsel), for appellees Mary Jane Nugent, Michael C. Nugent, and E. William Nugent III.

JUSTICE McLAREN delivered the opinion of the court:

The plaintiffs appeal from an order dismissing counts I and II of their first amended complaint with prejudice, pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, pars. 2—615, 2—619). They also appeal from an order denying leave to amend the complaint and to substitute parties. We affirm in part, reverse in part, and remand.

## I. BACKGROUND

Classic Auto Leasing, Inc. (Classic), was an Illinois corporation, engaged in the business of leasing new automobiles. It was owned and operated by Edward W. Nugent, Jr. (decedent Nugent), from April 1987, until his death in October 1988. Classic was subsequently controlled by Mary Jane Nugent, as administrator of decedent's estate (Estate), who appointed her sons Michael C. Nugent and Edward William Nugent III to run the business.

On February 28, 1989, the plaintiff Bank of Northern Illinois, formerly known as First Trust & Savings Bank of Glenview, filed a claim against the Estate of Nugent to collect on two guarantees for credit extended to Classic. The lines of credit took the form of two promissory notes. The first was dated November 30, 1987, in the amount of $322,000. The second was dated December 1, 1987, in the amount of $300,000. The loans were secured by guarantees of decedent Nugent, Donald J. Moyers and Rick Ozuk, employees of Classic, in limited percentages. Decedent Nugent provided additional personal guarantees for the full amount of each note. On April 4, 1989, a judgment on the claim was entered against the Estate for the full amount of the notes, plus interest.

In addition to the entry of the judgment, the plaintiff banks filed an amended complaint in three counts, naming as defendants the Estate of Edward W. Nugent, Jr. (Estate); the decedent's widow, Mary Jane Nugent (Mary Jane); the decedent's sons, Michael C. Nugent (Michael) and Edward William Nugent III (Edward); Classic Auto Leasing, Inc. (Classic); the employees Donald J. Moyers (Moyers) and Rick Ozuk (Ozuk).

Count I of the amended complaint alleged that Moyers, Ozuk, Michael, Edward, and Mary Jane engaged in tortious fraudulent conduct. It specifically alleged that the above-named defendants

perpetrated a fraud on the banks by causing Classic to use proceeds advanced in a manner inconsistent with the terms of the loan agreement.

Pursuant to the agreement, Classic was to use funds advanced to finance the purchase of new automobiles for future leasing and to repay the bank immediately upon receipt of payment. However, Moyers, Ozuk, and decedent Nugent are alleged to have used the funds to draw their salaries, as well as for other personal expenses. It is also alleged in count I that Michael and Edward misrepresented Classic's financial circumstances to the plaintiffs following Nugent's death, by requesting funding for automobiles which had already been transferred to the final purchasers and were no longer assets of Classic.

Count II of the complaint alleged that the above-described conduct constitutes a pattern or scheme to defraud a financial institution, in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. §§1962(a) through (d) (1988)).

Count III alleged that Moyers and Ozuk breached the loan contract with the bank by failing to honor their guarantees on the promissory notes. This count, however, is not subject to this appeal, as these defendants are in default for failing to appear and answer.

The Estate filed a motion to dismiss counts I and II of the complaint pursuant to section 2—619(a)(3) of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(3)). The basis for this motion was that count I prayed for recovery on the same notes for which a judgment was previously entered, which is duplicative and therefore barred, because "[t]here is another action pending between the same parties for the same cause." (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(3).) The Estate argued in its motion that count II should also be dismissed, because a RICO claim cannot be maintained against an estate.

After hearing arguments on the Estate's motion, the court dismissed counts I and II of the plaintiffs' amended complaint with prejudice and denied the plaintiffs' motion to further amend the complaint to name Mary Jane in her capacity as administrator of the Estate.

Michael, Edward, and Mary Jane Nugent subsequently filed a motion to dismiss counts I and II of the complaint pursuant to section 2—615 of the Code, for failing to state a cause of action. The Nugents argued in their motion that count I, the fraud claim, should be dismissed, because the promise to limit the use of the line of credit for purposes delineated in the loan agreement is merely a

promise of intent to perform a future action, which is insufficient to support a cause of action for fraud. They further argued that count II should also be dismissed, because the conduct consists of a single isolated injury, which does not constitute a "pattern" or "scheme" necessary to state a cause of action under RICO.

Thereafter, the plaintiffs filed a motion to reconsider the section 2—619 dismissal. The court heard arguments on the motion to reconsider and the section 2—615 dismissal simultaneously. It dismissed counts I and II against the Estate and confirmed its denial of leave to amend the complaint to name Mary Jane in her capacity as administrator of the Estate. Pursuant to the section 2—615 motion, the court dismissed counts I and II as to Mary Jane and dismissed only count II as to Michael and Edward. All of the dismissals were with prejudice.

Accordingly, the plaintiffs appeal from both the section 2—619 dismissal of the Estate and the subsequent section 2—615 dismissal of the Nugents. The central issues as to the section 2—619 dismissal are whether the judgment on the promissory notes against the Estate serves as a bar to the causes of action for fraud and whether a RICO claim can be maintained against an estate. The issue as to the section 2—615 dismissal is whether the court erred in determining that the complaint failed to state causes of action in fraud and under RICO. Also at issue is whether the court abused its discretion by refusing to allow the plaintiffs to amend the complaint and plead over.

## II. ANALYSIS

### A. PROCEEDING UNDER SECTION 2—615 OR SECTION 2—619

■■ The legal theories for proceeding on a motion to dismiss under section 2—615 and section 2—619 differ. Although all well-pleaded facts of the complaint are admitted and taken as true in both motions, the legal sufficiency of the complaint is disputed in a section 2—615 motion, but admitted in a section 2—619 motion. When a court dismisses under section 2—619, a subsequent dismissal under 2—615 is not logical, because the legal sufficiency of the complaint has been previously assumed by virtue of the section 2—619 motion. (See *Morrey v. Kinetic Services, Inc.* (1985), 133 Ill. App. 3d 1002, 1004 (the court stated in support of its reversal that there would have been no need for summary judgment if the motion to dismiss the complaint had been granted).) Therefore, it is inher-

ently inconsistent for a court to dimiss under section 2—619 and subsequently entertain a section 2—615 dismissal.

Our supreme court confronted this type of problem when the trial court examined a hybrid motion to dismiss with a motion for summary judgment in *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398. It stated in pertinent part:

"To combine an inquiry into whether a pleading is sufficient to state a cause of action with an examination which almost necessarily assumes that a cause of action has been stated and proceeds to determine whether there are any material issues of fact to be tried is likely to confuse both the parties and the court. If this sort of procedure were sanctioned, it would be left to the reviewing courts to sort matters out and to remand with directions to allow leave to amend the complaint ***. *** The defendants in this case should have first challenged the legal sufficiency of the complaint. When, and only when, a legally sufficient cause of action had been stated should the court have entertained the motions for summary judgment and considered the affidavits filed in support thereof." (*Janes,* 57 Ill. 2d at 406.)

In spite of the criticism of hearing such a hybrid motion, the *Janes* court considered the case on the merits in the interest of judicial economy. (See *Janes,* 57 Ill. 2d at 407.) Other courts have followed *Janes* by reviewing the merits of improper motions to dismiss, indicating that a combined motion is not grounds for reversal absent a showing of prejudice. See *Sutton v. Mytich* (1990), 197 Ill. App. 3d 672, 676; *MBL (USA) Corp. v. Diekman* (1985), 137 Ill. App. 3d 238, 242; *Davis v. Weiskopf* (1982), 108 Ill. App. 3d 505, 509.

■ Prejudice will result when the erroneous commingling of motions causes the court to improperly consider evidence or draw conclusions based on facts outside the complaint. (See *Bloomingdale State Bank v. Woodland Sales Co.* (1989), 186 Ill. App. 3d 227, 233; *Premier Electrical Construction Co. v. La Salle National Bank* (1983), 115 Ill. App. 3d 638, 642.) Aside from any prejudice the plaintiffs endured in defending the legal sufficiency of their complaint when it was previously deemed admitted, the plaintiffs were further prejudiced because the court did not adhere to the limitations of the respective motions when it made the simultaneous ruling. In dismissing Michael and Edward under section 2—615, it made findings with respect to the time frame during which the alleged fraud took place. All of the allegations in the complaint should have been regarded as admitted and true. But, instead, the

court chose particular allegations it believed were true and made findings based on a perceived set of facts, which was improper and prejudicial.

■ Furthermore, the court made improper conclusions of fact and law in dismissing the Estate under section 2—619. It implicitly determined that Mary Jane's acts did not constitute fraud on the part of the Estate by refusing to allow an amendment to name her in the capacity as administrator of the Estate. This inherent prejudice gives grounds for reversal alone. Nevertheless, in the spirit of *Janes*, we will review the merits of the dismissals in the interest of judicial economy.

B. THE SECTION 2—615 MOTION TO DISMISS

■ For purposes of the appeal of the dismissal pursuant to section 2—615, all well-pleaded facts within the four corners of the amended complaint are regarded as admitted and true, together with all reasonable inferences drawn in the light most favorable to the plaintiffs. (*Pelham v. Griesheimer* (1981), 93 Ill. App. 3d 751.) An appeal from a section 2—615 dismissal for failure to state a cause of action reviews only the question of the legal sufficiency of the complaint, by ascertaining whether the essential elements of the cause of action were alleged. (*Konicki v. Village of Hinsdale* (1981), 100 Ill. App. 3d 560.) The ultimate facts to be proved must be alleged, and any evidentiary support or conclusions drawn from the allegations should not be considered in a section 2—615 motion. (*Schnidt v. Henehan* (1986), 140 Ill. App. 3d 798.) Therefore, a motion to dismiss for failure to state a cause of action should be affirmed on appeal only where no set of facts can be proved under pleadings which set forth a cause of action entitling the plaintiff to relief. *Duncan v. Rzonca* (1985), 133 Ill. App. 3d 184.

COUNT I (FRAUD)

■ For the count I claim for common-law fraud to be legally sufficient, the plaintiff must allege that (1) the defendant made a statement; (2) of a material nature; (3) which was untrue; and (4) was known by the defendant to be untrue, or was made in culpable ignorance of its truth or falsity; (5) was made for the purpose of inducing reliance by the plaintiff; (6) was actually relied on by the plaintiff; and (7) resulted in plaintiff's injury. (*Brown v. Broadway Perryville Lumber Co.* (1987), 156 Ill. App. 3d 16; *International Meat Co. v. Bockos* (1987), 157 Ill. App. 3d 810.) However, a false representation of intent to act in the future, if it does not amount

to actual fraudulent conduct, is not a fraud in law. (*Roda v. Berko* (1948), 401 Ill. 335, 340; see also *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320.) The rationale for this rule is that allegations for fraud must be based on affirmative acts and not mere promises or expressions of intent to perform.

An exception to the general rule exists where the false promise or representation of future conduct is alleged to be part of a preexisting fraudulent scheme, with no intention of performing the promised acts. (*Baker, Bourgeois & Associates, Inc. v. Taylor* (1980), 84 Ill. App. 3d 909, 914, citing *Roda v. Berko* (1948), 401 Ill. 335.) In this instance, the court must look to the totality of the circumstances in determining whether a scheme or device to defraud has been pleaded with specificity. *Zaborowski v. Hoffman Rosner Corp.* (1976), 43 Ill. App. 3d 21, 25; see also *International Meat Co. v. Bockos* (1987), 157 Ill. App. 3d 810, 815.

In this case, the allegations of fraud are predicated on representations made on behalf of Classic, both before and after decedent Nugent's death. The complaint specifically alleges the fraud began when Moyers, Ozuk and decedent secured a line of credit from the plaintiff banks and used the funds for purposes contrary to the terms of the agreement. It further alleges that Michael and Edward continued the fraud after their father's death by intentionally misrepresenting Classic's economic condition to bank officers in an effort to secure further financing, that the banks relied on these statements, and would not have advanced additional funds if they knew Classic was not complying with the terms of the loan. Assuming these facts are true as we are directed in reviewing a section 2—615 dismissal, we find the allegations contained in count I are sufficient to state a cause of action for fraud against Michael and Edward. Therefore, the court erred in dismissing these parties under section 2—615.

Count I also names Mary Jane, individually, by virtue of the same conduct described above. However, her only alleged involvement in Classic's business operations was in appointing her sons to run the business following the death of her husband. She was not alleged to have directed or approved any statements made to the banks by Michael, Edward, or Moyers. Instead, the complaint alleges that she "knew or should have known in the diligent exercise of her duties as administrator of the Estate of decedent Nugent of the fraud perpetrated on the bank."

Regarding Mary Jane, the plaintiffs did not properly plead the *scienter* and intent elements necessary to state a cause of action for

fraud. Allegations of fraud must contain specific, directive manifestations of fraudulent intent for fraud. References to plans or schemes without specific allegations of intent are too conclusional to satisfy the pleading requirements. (*Schnidt v. Henehan* (1986), 140 Ill. App. 3d 798, 805.) Therefore, "knew or should have known" allegations do not comport with the standard for pleading *scienter* and intent. (*Landon v. GTE Communications Services Inc.* (N.D. Ill. 1988), 696 F. Supp. 1213, 1219 (applying Illinois law), citing *Polivka v. Worth Dairy, Inc.* (1974), 26 Ill. App. 3d 961, 965-66.) Accordingly, we find that the section 2—615 dismissal of Mary Jane from count I was proper.

2. COUNT II (RICO)

■■ Count II of plaintiffs' amended complaint alleges that defendants Michael, Edward, Mary Jane, Moyers, and Ozuk violated the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. §§1962(a) through (d) (1988)). The complaint prays for civil damages under section 1964 of RICO by virtue of the same conduct described above. To state a claim for relief in a civil action under RICO, a plaintiff must plead that: (1) a person, through a pattern of racketeering activity; (2) directly or indirectly invests, maintains an interest, or participates in an enterprise or conspires to do any of the foregoing; (3) all of which affects interstate commerce. 18 U.S.C. §§1962(a) through (d) (1988).

A violation of section 1962(a) requires the receipt of income from a pattern of racketeering and the use of that income in the operation of an enterprise. Section 1962(b) requires a person engaging in a pattern of racketeering activity to acquire or maintain an interest in an enterprise engaged in interstate commerce. A section 1962(c) violation requires a person employed by an enterprise to participate in the conduct of that enterprise's affairs through a pattern of racketeering activity. Finally, a section 1962(d) violation requires a person to conspire to violate any subsection of section 1962. In all sections, however, the crucial element of the claim is the existence of a pattern of racketeering activity. See *Sedima, S.P.R.L. v. Imrex Co.* (1985), 473 U.S. 479, 87 L. Ed. 2d 346, 105 S. Ct. 3275.

A "pattern" is defined under the statute as "at least two acts of racketeering activity *** the last of which occurred within ten years [of the first]." (18 U.S.C. §1961(5) (1988).) The Supreme Court has indicated that two predicate acts alone are insufficient to constitute a pattern, suggesting that the acts must have "*continuity plus relation-*

*ship* which combines to produce a pattern." (Emphasis in original.) (*Sedima*, 473 U.S. at 496 n.14, 87 L. Ed. 2d at 358 n.14, 105 S. Ct. at 3285 n.14.) Fortunately, the Supreme Court has recently discussed what is necessary to properly plead a "pattern." (See *H.J. Inc. v. Northwestern Bell Telephone Co.* (1989), 492 U.S. 229, 106 L. Ed. 2d 195, 109 S. Ct. 2893.) The "relationship" prong requires that the predicate acts be committed somewhat closely in time and involve the same victim or the same type of misconduct. The "continuity" prong, however, has been defined as "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." (*H.J. Inc.*, 492 U.S. at 241, 106 L. Ed. 2d at 209, 109 S. Ct. at 2902.) The Court, however, stressed that a RICO pattern will be established only when "the predicates themselves amount to, or *** otherwise constitute a threat of, *continuing* racketeering activity." (Emphasis in original.) *H.J. Inc.*, 492 U.S. at 240, 106 L. Ed. 2d at 208, 109 S. Ct. at 2901.

In providing several examples of predicates meeting its construction of a "pattern," the court stated that "the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business," legitimate, or otherwise. (*H.J. Inc.*, 492 U.S. at 242, 106 L. Ed. 2d at 210, 109 S. Ct. at 2902.) However, it noted that the facts of each case must always be considered, stating that "[t]he limits of the relationship and continuity concepts that combine to define a RICO pattern, and the precise methods by which relatedness and continuity or its threat may be proved, cannot be fixed in advance with such clarity that it will always be apparent whether in a particular case a 'pattern of racketeering activity' exists." *H.J. Inc.*, 492 U.S. at 243, 106 L. Ed. 2d at 210, 109 S. Ct. at 2902.

■■ Defendants contend that the activity allegedly violating RICO was directed at one victim over a two-month period which is insufficient to constitute a "pattern" under the statute. Although the line of credit was advanced in the form of two notes with different dates, defendants conclude that the close proximity of the dates indicates that it was a single transaction. Because the defendants moved to dismiss count II under section 2—615, we are directed to consider only the allegations in the four corners of the complaint. We believe there is insufficient evidence necessary to establish, as a matter of law, that the alleged fraudulent conduct constitutes a single transaction. Therefore, the court erred in dismissing these parties under section 2—615.

The plaintiffs also allege that Mary Jane violated the same provisions of RICO. However, as we stated earlier, Mary Jane's only alleged involvement with Classic was in appointing her sons to run the business. She was not an employee of Classic, nor did she allegedly conspire with any of the employees to violate RICO. She is not alleged to have known of any acts concerning Classic by her husband prior to his death, or of Michael, Edward, Moyers or Ozuk following his death. Furthermore, any benefit by virtue of the alleged actions would be imputed to Classic and to the Estate and not to Mary Jane in her individual capacity. Therefore, the section 2—615 dismissal of Mary Jane from count II was proper.

Nevertheless, the trial court did not allow the plaintiffs to amend the complaint to attempt to state a cause of action against Mary Jane, Michael or Edward. The court also denied a motion to amend the complaint to name Mary Jane as administrator of the Estate.

Parties do not have an absolute right to amend, but may do so only at the trial court's discretion. (*Village of Rosemont v. Lentin Lumber Co.* (1986), 144 Ill. App. 3d 651.) However, amendments to pleadings should be liberally allowed, unless an opposing party would be prejudiced as a result. (*Maplehurst Farms, Inc. v. Greater Rockford Energy & Technology Co.* (1988), 167 Ill. App. 3d 767, 770.) A court's decision to allow an amendment will not be disturbed absent an abuse of discretion. (*Talas v. Youngstown Sheet & Tube Co.* (1985), 134 Ill. App. 3d 103, 107.) Among the factors to be considered in deciding whether discretion was properly exercised is whether the proposed amendment would cure the defective pleading; whether it would cause prejudice or surprise to the other parties; the timeliness of the proposed amendment; and whether previous opportunities to amend the pleadings were allowed. *Schwaner v. Belvidere Medical Building Partnership* (1987), 155 Ill. App. 3d 976, 988; *Talas*, 134 Ill. App. 3d at 107.

Assuming *arguendo* that the complaint did not sufficiently state a cause of action, the court abused its discretion by dismissing the cause with prejudice. As counsel for the plaintiffs stated, the court's finding that the complaint did not provide sufficient facts to state a cause of action does not necessarily mean those facts do not exist. The sufficiency of the complaint was considered only once, and it was not clear that the defect could not be cured. An amendment would have been in furtherance of justice in this case. The court abused its discretion by refusing to allow leave to amend and to name Mary Jane in her capacity as administrator of the Estate.

## C. THE SECTION 2—619 MOTION TO DISMISS

Section 2—619 of the Code provides nine grounds upon which a motion to dismiss may be based. The Estate contends that the count I claim for fraud should be dismissed under section 2—619(a)(3), because by virtue of the prior judgment on the notes, "there is another action pending between the same parties for the same cause." (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(3).) The Estate further contends that the count II RICO claim cannot be maintained against an estate and should be dismissed under section 2—619(a)(9), as "other affirmative matter avoiding the legal effect of or defeating the claim." Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9).

### 1. COUNT I (FRAUD)

■■ Section 2—619(a)(3) allows dismissal of a complaint if "there is another action pending between the parties for the same cause." (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(3).) The purpose of section 2—619(a)(3) is to relieve both courts and litigants of the unnecessary burden of duplicative litigation. (*Ransom v. Marrese* (1988), 122 Ill. 2d 518, 530.) Our supreme court considered the "same cause" requirement of section 48(a)(3), the predecessor to section 2—619(a)(3), in *Skolnick v. Martin* (1964), 32 Ill. 2d 55. It noted that "[t]he section refers to 'the same cause,' not to the same 'cause of action,' and it has been held that actions are 'for the same cause,' when relief is requested on substantially the same set of facts. [Citations.] *** [I]dentity of cause of action depends on identity of transaction or occurrence." *Skolnick*, 32 Ill. 2d at 57.

Thus, the crucial inquiry is whether the relief requested is on substantially the same set of facts, not whether the legal theory, issues, burden of proof or relief sought differ between the two actions. (*Catalano v. Aetna Casualty & Surety Co.* (1982), 105 Ill. App. 3d 195, 198.) The statute may be invoked to support a dismissal when there is a substantial similarity of issues between the two actions, even though the purposes are not identical. (*Tambone v. Simpson* (1980), 91 Ill. App. 3d 865, 867.) It is important to note, however, that the remedies delineated in section 2—619(a)(3) are within the discretion of the court and are not mandated by the pendency of another cause between the same parties arising out of the same operative facts. See *People ex rel. Department of Public Aid v. Santos* (1982), 92 Ill. 2d 120; *A.E. Staley Manufacturing Co. v. Swift & Co.* (1980), 84 Ill. 2d 245.

■■ The facts underlying the plaintiffs' judgment entered on the notes and the claims asserted in counts I and II are not the same. In

order to procure a judgment against the Estate based on the notes, the plaintiffs were required merely to show that the decedent owed sums of money which remained unpaid, as evidenced by the notes themselves. These facts alone are insufficient to support a cause of action either for fraud, or under RICO. Additionally, the plaintiffs' amended complaint prays for relief in tort and for punitive damages, which do not encompass the prior judgment on the notes. Although the mere possibility of procuring additional relief on an alternate theory is insufficient in determining that the causes of action are sufficiently separate, the claims for fraud and under RICO set forth additional facts which show additional "transactions" or "occurrences" in a different time frame.

In addition, the Nugents assert that the prior judgment serves as a bar to any further causes of action under the doctrine of *res judicata*. The doctrine of *res judicata* provides that a final judgment on the merits operates as a bar to any subsequent cause of action between the same parties or their privies which was or might have been litigated in the earlier proceeding. (*Mendelson v. Lillard* (1980), 83 Ill. App. 3d 1088, 1095.) It applies only in situations where the first and second causes involve the same parties, subject matter, and issues. *National Tea Co. v. Confection Specialities, Inc.* (1977), 48 Ill. App. 3d 650.

The prior judgment was entered against the Estate, which is only one defendant in this case. As we stated above, different evidence is necessary to sustain causes of action for fraud or under RICO than in contract. Furthermore, the causes of action alleged in the plaintiffs' amended complaint arose, in part, *after* the judgment on the contract claim had been entered. It is absurd to plead that a cause of action is barred by a prior judgment that did not exist at the time the judgment was entered. Therefore, the plaintiffs should not be barred from advancing the two additional theories as a basis for relief. Under such circumstances, it was an abuse of discretion for the trial court to have dismissed the Estate from count I of the plaintiffs' amended complaint under section 2—619.

2. COUNT II (RICO)

In support of the dismissal of count II, the Estate contends that a RICO claim cannot be maintained against it because (1) a "pattern" of racketeering activity was not alleged, as required by the RICO statute; (2) RICO is penal in nature and does not survive the death of Edward W. Nugent, Jr., and (3) an estate is not considered a "person" for RICO purposes. The Estate moves to dismiss pursuant to

section 2—619(a)(9), on the basis that the above contentions constitute "other affirmative matter avoiding the legal effect of or defeating the claim" (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9)).

■■ "Affirmative Matter," within the meaning of section 2—619(a)(9) must be something more than the assertion that the complaint fails to state a cause of action, since the well-pleaded facts must be taken as true for purposes of a section 2—619 dismissal. In order to sustain dismissal, the moving party must set forth facts which constitute an affirmative matter completely negating the plaintiff's cause of action, or refuting crucial conclusions of law, or refuting material facts which are unsupported by allegations of specific fact contained in or inferred from the complaint. (*Samansky v. Rush-Presbyterian-St. Luke's Medical Center* (1990), 208 Ill. App. 3d 377, 383-84; *Egidi v. Town of Libertyville* (1989), 181 Ill. App. 3d 542, 546.) Therefore, it is necessary to examine whether the facts as alleged and taken as true set forth a viable cause of action against the Estate.

■■ In our discussion of the section 2—615 motion to dismiss, we determined that defendants had not established that the complaint failed to plead a "pattern" of racketeering activity as a matter of law. Since the alleged fraud took place before decedent Nugent's death, and was alleged to continue after his death by agents of the Estate and the corporation, defendants' first contention lacks merit.

■■ The Estate next contends that, because a civil RICO action is penal in nature, it does not survive the death of the alleged wrongdoer. The RICO statute contains no provision regarding survival or abatement of a cause of action brought under it. Since there is no applicable general Federal statute, Federal common law governs the survival of a RICO claim. *Smith v. No. 2 Galesburg Crown Finance Corp.* (7th Cir. 1980), 615 F.2d 407, 413.

Therefore, a determination of whether a civil RICO action is penal or remedial is necessary to resolve this issue. Although the Court of Appeals for the Seventh Circuit has set forth a three-part test for determining whether an action is generally considered penal or remedial (see *Smith*, 615 F.2d at 414), it has never addressed the issue in the context of a civil RICO claim for treble damages. Three courts in the Northern District of Illinois and several courts outside this district have decided this issue. (See *Carroll v. Brown* (N.D. Ill. 1988), No. 80—C—6251; *Eliasen v. Hamilton* (N.D. Ill. 1987), No. 81—C—123; *First Interstate Bank v. Chapman & Cutler* (N.D. Ill. 1986), No. 83—C—8583, Fed. Sec. L. Rep. (CCH), at 91,994; *Faircloth v. Jackie Fine Arts, Inc.* (D. S.C. 1988), 682 F. Supp. 837, 850; *Summers v. Federal*

*Deposit Insurance Corp.* (W.D. Okla. 1984), 592 F. Supp. 1240, 1243; *State Farm Fire & Casualty Co. v. Estate of Caton* (N.D. Ind. 1982), 540 F. Supp. 673, 677.) However, these decisions are not uniform, and there is clearly a split among districts.

Furthermore, the cases cited above address the issue of whether a claim for treble damages under RICO may be assessed against an estate for conduct only of the decedent during his lifetime. In this case, the complaint alleged fraudulent conduct both before and after decedent Nugent's death. Therefore, these cases are factually inapposite, and this contention lacks merit.

■ Finally, defendants cite several Illinois cases for the proposition that decedents' estates "are not natural or artificial persons and lack capacity to sue or be sued." (*Precision Components, Inc. v. Estate of Kuntz* (1983), 112 Ill. App. 3d 309, 310; *Wisemantle v. Hull Enterprises, Inc.* (1981), 103 Ill. App. 3d 878, 881; *Estate of Godair v. Case* (1920), 220 Ill. App. 348, 349.) Contrary to defendants' assertion, these cases do *not* indicate that an estate is nothing more than a collection of assets and cannot be sued. A reading of each case in its entirety indicates that the statement is included to support the proposition that a claim against an estate must be brought through its executor or administrator, who must be named as a party. Therefore, the court abused its discretion in refusing to allow plaintiffs to amend the complaint to name Mary Jane as executor. Accordingly, we find the affirmative defenses raised by defendants lack merit, are unavailing, and the section 2—619 dismissal of the Estate from count II was improper.

To summarize, we affirm the section 2—615 dismissal of Mary Jane Nugent from counts I and II; we reverse the section 2—615 dismissal of Michael Nugent and Edward Nugent from count II; we reverse the section 2—619 dismissal of the Estate from counts I and II; and we remand this case to the trial court with directions to allow plaintiffs to amend the complaint.

Accordingly, the judgment of the circuit court of Lake County is affirmed in part, reversed in part, and remanded.

Affirmed in part; reversed in part and remanded.

UNVERZAGT and NICKELS, JJ., concur.