JEFFREY BECKER *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. KATHLEEN T. ZELLNER, d/b/a Kathleen T. Zellner and Associates, *et al.*, Defendants-Appellees and Cross-Appellants.

Second District No. 2—96—1309

Opinion filed September 16, 1997.—Rehearing denied October 17, 1997.

Jeffrey Becker, Steven Becker and Thomas Becker, all of Monee, appellants *pro se.*

Kathleen T. Zellner and Daniel W. Pisani, both of Kathleen T. Zellner & Associates, of Naperville, for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiffs, Jeffrey, Steven, and Thomas Becker (collectively, plaintiffs), appeal the dismissal of their complaint against defendants, Kathleen T. Zellner (Zellner) and Kathleen T. Zellner & Associates, P.C. (collectively, defendants). Defendants cross-appeal the denial of their motion for sanctions. We affirm in part, reverse in part, and remand.

Preliminarily, we note that defendants have filed a motion to dismiss plaintiffs' appeal. This motion was ordered to be taken with the case. We deny defendants' motion and will consider the merits of plaintiffs' appeal.

The following summary of facts is taken from the pleadings. On May 6, 1996, plaintiffs filed a five-count complaint against defendants in which they alleged that, as paralegals, they assisted defendants in their representation of Frank Lyons during the fall of 1994. On May 9, 1995, Sharon Wendt, a friend of Lyons, called defendants in order to obtain plaintiffs' telephone number for Lyons. Lyons apparently wanted plaintiffs to work with his new attorney. In the presence of an associate of her firm, defendant Zellner accepted Wendt's call and placed it on a speakerphone. Zellner then allegedly told Wendt (1) that during plaintiffs' employment with her, they had submitted "a $45,000 bill for five pages of worthless memorandum"; (2) that Lyons should not contact plaintiffs; and (3) that plaintiffs were "devious" and that they would try to "get into the back door" when charging Lyons for their services.

Plaintiffs' complaint further alleged that later on May 9, 1995, Lyons "left a message on their answering machine stating that he wanted to know whether Plaintiffs were going to stick him with a $45,000.00 bill." Lyons did not hire plaintiffs to assist him in the preparation of his case, and their "business relationship and reputation" with Lyons were "never the same" after Zellner's telephone conversation with Wendt.

On March 19, 1996, plaintiffs' attorney sent defendants a letter in an attempt to negotiate a settlement regarding payments allegedly owed to them. On March 21, 1996, defendants responded with a letter to plaintiffs' attorney (March 21 letter), in which Zellner stated:

"My only settlement offer to you in regard to the [plaintiffs] is

that I will not seek sanctions against you if you do not file this lawsuit. Your clients will be countersued for their fraudulent misrepresentations to this firm about their prior unauthorized practice of law ***."

On May 6, 1996, plaintiffs filed their complaint against defendants. Plaintiffs alleged that defendant Zellner had committed slander *per se*, slander *per quod*, and commercial disparagement during her May 9, 1995, telephone conversation with Wendt. Additionally, plaintiffs sought damages against defendants for intimidation and extortion based on the March 21 letter.

On June 7, 1996, defendants filed a motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 1994)). On the same day, defendants filed a motion for sanctions pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137) based on the intimidation and extortion counts of plaintiffs' complaint.

On July 16, 1996, defendants filed a motion to stay plaintiffs' discovery pending the trial court's decision with respect to their section 2—615 motion. On July 18, 1996, the trial court granted defendants' motion to stay plaintiffs' discovery.

On August 6, 1996, plaintiffs filed their response to defendants' section 2—615 motion to dismiss. Plaintiffs argued that defendants' motion to dismiss was improperly brought pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 1994)) because it impermissibly raised "affirmative factual defenses based upon extrinsic facts unsupported by affidavit." On the same date, plaintiffs also filed a motion for sanctions against defendants pursuant to Rule 137 (155 Ill. 2d R. 137).

On September 30, 1996, the trial court granted defendants' section 2—615 motion to dismiss plaintiffs' complaint. The trial court found that count I (slander *per se*) was subject to the innocent construction rule; count II (slander *per quod*) was insufficiently pleaded; count III (commercial disparagement) was not a recognized cause of action; and count IV (intimidation) and count V (extortion) were subject to absolute privilege. The trial court also denied each party's motions for Rule 137 sanctions.

In a subsequent order of October 7, 1996, the trial court stated that its dismissal of plaintiffs' complaint was "*with prejudice.*" (Emphasis in original.) Additionally, the trial court denied plaintiffs' oral motion for discovery for purposes of amending their complaint. Plaintiffs and defendants thereafter filed their respective appeal and cross-appeal.

On appeal, plaintiffs contend that the trial court erred in (1)

granting defendants' motion to dismiss; (2) barring them from conducting any discovery prior to its ruling on the motion to dismiss; (3) denying their oral motion to conduct discovery for purposes of amending their complaint; (4) determining that Zellner's allegedly defamatory statements were capable of an innocent construction; and (5) finding that allegations of intimidation and extortion were governed by the doctrine of absolute privilege. Defendants contend in their cross-appeal that the trial court erred in denying their motion for sanctions.

## I

Plaintiffs' first contention on appeal is that the trial court erred in granting defendants' section 2—615 motion to dismiss. According to plaintiffs, defendants' motion was improper because it "impermissibly raised affirmative factual defenses based upon extrinsic facts unsupported by affidavit." In other words, plaintiffs contend that it was improper for defendants to raise the affirmative defenses of innocent construction and absolute privilege in their section 2—615 motion. As such, the trial court erred in granting defendants' improper motion to dismiss. To examine this contention fully, we must first discuss the differences between a section 2—615 motion and a section 2—619 motion.

## A

■ Our supreme court has recently counseled that "meticulous practice" dictates that parties specifically, and properly, designate whether their motions to dismiss are pleaded pursuant to section 2—615 or section 2—619 of the Code (735 ILCS 5/2—615, 2—619 (West 1994)). See *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484 (1994). The misdesignation of a motion to dismiss, however, is not always fatal to the movant's right to prevail. *Scott Wetzel Services v. Regard*, 271 Ill. App. 3d 478, 481 (1995). Reversal may be required if the nonmovant is prejudiced by the movant's improper motion practice. See *Illinois Graphics*, 159 Ill. 2d at 484; *Buais v. Safeway Insurance Co.*, 275 Ill. App. 3d 587, 589 (1995).

■ Here, plaintiffs' complaint was dismissed pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 1994)). Section 2—615 provides for dismissal for "defects in [the] pleadings" where the complaint is "substantially insufficient in law." 735 ILCS 5/2—615 (West 1994). Motions to dismiss pursuant to this section attack only the legal sufficiency of the complaint. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86 (1996). As such, a section 2—615 motion "does not raise affirmative factual defenses but alleges only defects on the face of the complaint." *Bryson*, 174 Ill. 2d at 86. A reviewing

court must accept as true all well-pleaded facts and reasonable inferences that may be drawn therefrom (*Bryson*, 174 Ill. 2d at 86) and determine whether the allegations in the complaint, when viewed in the light most favorable to the plaintiff, "sufficiently set forth a cause of action on which relief may be granted" (*Brock v. Anderson Road Ass'n*, 287 Ill. App. 3d 16, 20 (1997)). A claim should not be dismissed unless it appears that no set of facts can be proved that would entitle the plaintiff to recovery. *Bryson*, 174 Ill. 2d at 86-87.

In contrast, section 2—619(a)(9) of the Code allows for dismissal on the pleadings if "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 1994). Again, all well-pleaded facts are deemed admitted. *Brock*, 287 Ill. App. 3d at 21. However, the moving party under section 2—619 "admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats the claim." *Brock*, 287 Ill. App. 3d at 21. The granting of either a section 2—615 or a section 2—619 motion to dismiss is reviewed *de novo*. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993); *Brock*, 287 Ill. App. 3d at 21.

Thus, it is apparent that a motion to dismiss under section 2—615 differs significantly from a motion for involuntary dismissal under section 2—619. A section 2—615 motion is solely concerned with defects on the face of the complaint. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 8 (1992); *Yu v. Kobayashi*, 281 Ill. App. 3d 489, 492 (1996). In contrast, a section 2—619 motion admits the legal sufficiency of the complaint (*Vroegh v. J&M Forklift*, 165 Ill. 2d 523, 530 (1995)), but asks for a dismissal based on other affirmative matters of law or easily proved issues of fact (*Yu*, 281 Ill. App. 3d at 492; *Harris v. News-Sun*, 269 Ill. App. 3d 648, 650 (1995)). Because of these differences, affirmative defenses are only generally properly pleaded in a section 2—619 motion, where the legal sufficiency of the complaint is admitted. Raising such defenses in a section 2—615 motion would completely contradict the purpose of bringing such a motion, where the movant is expressly challenging the sufficiency of the complaint itself. Thus, affirmative defenses may not be raised in a section 2—615 motion. *Bryson*, 174 Ill. 2d at 86; *Illinois Graphics*, 159 Ill. 2d at 484-85.

## B

■ Despite these principles, the Appellate Court, First District, has repeatedly recognized that trial courts may apply the innocent construction rule when deciding a motion to dismiss brought pursu-

ant to section 2—615. See, *e.g., Taradash v. Adelet/ Scott-Fetzer Co.*, 260 Ill. App. 3d 313 (1993); *Heerey v. Berke*, 188 Ill. App. 3d 527, 530 (1989). The rationale of these decisions seems to be that, while "the question of whether a statement is reasonably understood as defamatory is generally a question of fact for the jury, it is nevertheless the role of the court to determine, in the first instance, if the alleged defamatory remark is reasonably susceptible to an innocent construction." *Heerey*, 188 Ill. App. 3d at 530; see *Berkos v. National Broadcasting Co.*, 161 Ill. App. 3d 476, 485 (1987). In other words, even though innocent construction is an affirmative defense and would normally only be raised in a section 2—619 motion, a court may review it under a section 2—615 motion because of the nature of the cause of action and the defense. Only the court may determine whether an allegation is capable of an innocent construction, and that determination can be made from the four corners of the complaint. As such, the first district has concluded that pleading innocent construction as an affirmative defense in a section 2—615 motion is proper. We find this reasoning to be persuasive. Therefore, we hold that trial courts may properly apply the innocent construction rule when ruling on both section 2—615 and section 2—619 motions to dismiss.

Contrary to plaintiffs' contention, both in their brief and at oral argument, this court has never held that the innocent construction rule may *only* be applied in cases involving a section 2—619 motion. Plaintiffs' citations to *Cartwright v. Garrison*, 113 Ill. App. 3d 536, 540 (1983), and *Kilbane v. Sabonjian*, 38 Ill. App. 3d 172, 175 (1976), are misplaced. In both cases, we held that whether allegedly defamatory language was subject to the innocent construction rule could properly be considered under a motion for involuntary dismissal. *Cartwright*, 113 Ill. App. 3d at 540 (innocent construction rule properly considered under section 48(1)(i) of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 48(1)(i) (now 735 ILCS 5/2—619(a)(9) (West 1994)))); *Kilbane*, 38 Ill. App. 3d at 175 (same). We did not hold that the innocent construction rule can *only* be considered under section 2—619 or that it may *never* be considered under section 2—615. Accordingly, defendants did not improperly raise the affirmative defense of innocent construction in their section 2—615 motion to dismiss.

## C

Even though defendants properly raised their affirmative defense of innocent construction, their motion to dismiss was insufficient for another reason. In their motion to dismiss, defendants argued, at

some length, that the comments Zellner allegedly made during her telephone conversation with Wendt were in the context of a "billing dispute." According to defendants, it was this context which made Zellner's remarks merely a matter of opinion and not capable of rising to the level of slander *per se*. Defendants did not attach any affidavits in support of their motion to dismiss.

However, plaintiffs did not allege in their complaint that Wendt called Zellner in regard to a billing dispute between plaintiffs and defendants. Moreover, there is nothing in the pleadings that indicates that Wendt knew or should have known of such a dispute when she called Zellner. All that plaintiffs alleged in their complaint was that Wendt called Zellner in order to obtain plaintiffs' telephone number for Lyons. Thus, by arguing in their motion to dismiss that the Zellner/Wendt telephone conversation occurred during a "billing dispute" and that this context frames Zellner's comments as anything but slander *per se*, defendants were pleading facts that were extrinsic to plaintiffs' complaint.

■ It is axiomatic that, in ruling on a section 2—615 motion, the trial court may consider only the allegations of the complaint and may not consider other supporting material. *Bryson*, 174 Ill. 2d at 91. Thus, facts relating to the "billing dispute" as alleged by defendants cannot properly be considered under their section 2—615 motion. As a result, we may consider whether defendants' motion would be proper under section 2—619. See *Bryson*, 174 Ill. 2d at 92.

It is equally well settled that under section 2—619 any grounds for dismissal not appearing on the face of the complaint must be supported by affidavit. 735 ILCS 5/2—619(a) (West 1994); *Illinois Graphics*, 159 Ill. 2d at 485. Because the extrinsic facts defendants alleged in their motion to dismiss are crucial to their arguments yet were not submitted via affidavit, their motion to dismiss, even when construed as a section 2—619(a)(9) motion, is legally insufficient. See *Waterford Executive Group, Ltd. v. Clark/Bardes, Inc.*, 261 Ill. App. 3d 338, 343 (1994) (trial court may not consider matters unsupported by affidavit).

The trial court should not have acquiesced in this improper motion practice. See *Summers v. Village of Durand*, 267 Ill. App. 3d 767, 768 (1994). In order to determine whether a reversal is necessary, we must now examine whether plaintiffs were prejudiced by the trial court's error. See *Schwanke, Schwanke & Associates v. Martin*, 241 Ill. App. 3d 738, 744 (1992). If plaintiffs were prejudiced by defendants' improper motion practice, we may either "reverse without addressing the merits of the motion as argued on appeal" (*Eddings v. Dundee Township Highway Commissioner*, 135 Ill. App. 3d 190, 200 (1985)),

or, in the interests of judicial economy, we may review the merits of the dismissal (*Bank of Northern Illinois v. Nugent*, 223 Ill. App. 3d 1, 9 (1991)).

## D

In order to determine whether plaintiffs were prejudiced, we must examine the impact of defendants' improper motion to dismiss. The record does not indicate whether the trial court expressly considered whether the Zellner/Wendt telephone conversation occurred in the context of a "billing dispute." However, the trial court dismissed plaintiffs' cause of action with prejudice as a result of its review of defendants' improperly pleaded motion to dismiss. We believe that plaintiffs therefore suffered sufficient prejudice to allow us either to reverse the trial court's decision (*Eddings*, 135 Ill. App. 3d at 200) or, in the interests of judicial economy, to consider the merits of the dismissal (*Bank of Northern Illinois*, 223 Ill. App. 3d at 9). In the interests of judicial economy, we will review the merits of the dismissal of each of the counts of plaintiffs' complaint. See *Bank of Northern Illinois*, 223 Ill. App. 3d at 9.

## E

■ Defendants' motion to dismiss was labeled as a section 2—615 motion and was treated as such by the parties and the trial court. It sought the dismissal of plaintiffs' complaint for "failure to make a claim for which relief may be granted." Accordingly, the question on review is "whether sufficient facts are contained in the pleadings which, if established, could entitle [plaintiffs] to relief." *Illinois Graphics*, 159 Ill. 2d at 488. A cause of action should be dismissed when it is apparent that no set of facts can be proved that would entitle the nonmovant to relief. *Illinois Graphics*, 159 Ill. 2d at 488.

## 1

### THE SLANDER *PER SE* COUNT

In count I of their complaint, plaintiffs alleged that Zellner had committed slander *per se* during her conversation with Wendt. Specifically, plaintiffs pointed to Zellner's alleged statements that they had submitted "a $45,000 bill for five pages of worthless memorandum," that Lyons should not contact them, and that they were "devious" and "would try to get into the back door." According to plaintiffs, these alleged statements constituted slander *per se* because they pertained to plaintiffs' "profession and employment." The trial court found the statements "susceptible of an innocent construction as a matter of law" and dismissed the *per se* count.

■ The four categories of statements that are considered actionable *per se* include:

"(1) [W]ords that impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business." *Bryson*, 174 Ill. 2d at 88. Even if words fall into a *per se* category, the claim will not be actionable if the words are capable of an innocent construction. *Bryson*, 174 Ill. 2d at 90. Under the innocent construction rule, courts consider the statement "in context, giving the words, and their implications, their natural and obvious meaning." *Bryson*, 174 Ill. 2d at 90. Importantly, only a *reasonable* innocent construction will negate the *per se* effect of an allegedly defamatory statement. *Bryson*, 174 Ill. 2d at 90. Courts decide, as a matter of law, whether an allegedly defamatory statement is reasonably capable of being innocently construed. *Bryson*, 174 Ill. 2d at 90.

■ Plaintiffs argue that Zellner's alleged statements fall into the fourth *per se* category, as words that impute their lack of abilities as paralegals. We agree. In context, Zellner's allegedly defamatory statements were obviously intended to describe and denigrate plaintiffs' abilities as paralegals. She allegedly called plaintiffs' work product "worthless," labeled them as "devious," and, in an apparent attempt to further impugn their characters, told Wendt that they would try to "get into the back door" during their billing process. The natural and obvious meaning of these words prejudices plaintiffs and imputes a lack of ability in their profession as paralegals. See *Bryson*, 174 Ill. 2d at 88.

Despite counsel's humorous and creative attempt at oral argument to the contrary, the natural and obvious meanings of "worthless" and "devious" are negative. Webster's Dictionary defines "devious" as "hard to pin down or bring to agreement" and lists as synonyms "shifty, tricky, unscrupulous, [and] unfair." Webster's Third New International Dictionary 619 (1986). Moreover, Webster's defines "worthless" as "lacking value or material worth" and lists "useless" as a synonym. Webster's Third New International Dictionary 2637 (1986). Counsel's alternative definitions of these words at oral argument were accurate, but the mere existence of other dictionary definitions does not automatically indicate an innocent construction. See *Bryson*, 174 Ill. 2d at 93. Rather, under the innocent construction rule, we are neither required to "strain to find an unnatural but possibly innocent meaning for words where the defamatory meaning is far more reasonable," nor are we required to "espouse a naïveté unwarranted under the circumstances." *Bryson*,

174 Ill. 2d at 94. Thus, we reject defendants' contention that Zellner's alleged statements can be innocently construed. Accordingly, we reverse the trial court's dismissal of count I of plaintiffs' complaint.

## 2

## THE SLANDER *PER QUOD* COUNT

In count II of their complaint, plaintiffs alleged that Zellner had committed slander *per quod* during her conversation with Wendt. In pertinent part, defendants responded in their motion to dismiss that the plaintiffs' allegations of damages were insufficient to support their cause of action. The trial court found that plaintiffs' special damages were insufficiently and vaguely pleaded, and it accordingly dismissed the *per quod* count.

In their complaint, plaintiffs alleged that Zellner's statements to Wendt "caused or contributed to Plaintiffs losing prospective employment opportunities with respect to the preparation of a civil complaint to be filed in federal court on behalf of the Lyonses." As a result of this loss, plaintiffs averred that they "have suffered injury to their reputation, loss of income, loss of prospective economic advantage, and injury to business relationships."

■ It is well settled that, in order to prevail on a claim for defamation *per quod*, a plaintiff must allege special damages with particularity. *Barry Harlem Corp. v. Kraff*, 273 Ill. App. 3d 388, 394 (1995). General allegations such as damage to one's health or reputation, economic loss, and emotional distress are insufficient to state a cause of action for defamation *per quod*. *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 190 Ill. App. 3d 524, 530 (1989); *Heerey*, 188 Ill. App. 3d at 532-33.

■ In this case, plaintiffs alleged special damages with particularity. Plaintiffs alleged that Zellner's telephone conversation with Wendt, a close friend of Frank Lyons, "caused or contributed to Plaintiffs losing prospective employment opportunities with respect to the preparation of a civil complaint to be filed in federal court on behalf of the Lyonses." In other words, plaintiffs alleged that a third party actually stopped doing business with them as a result of Zellner's alleged statements. This allegation is sufficient to support a claim of defamation *per quod*. Compare *Halpern v. News-Sun Broadcasting Co.*, 53 Ill. App. 3d 644, 653 (1977) (allegation that plaintiff lost income and continued to lose income as a result of patients leaving its nursing home sufficient to support special damages), with *Downers Grove Volkswagen*, 190 Ill. App. 3d at 530-31 (plaintiff's allegation of special damages insufficient to support defamation *per quod* where plaintiff did not allege that customers stopped

doing business with it as a result of defendant's alleged actions). If plaintiffs properly establish their damages as alleged in their complaint, they could be entitled to relief. See *Illinois Graphics*, 159 Ill. 2d at 488. Accordingly, we reverse the trial court's dismissal of count II of plaintiffs' complaint.

### 3

### THE COMMERCIAL DISPARAGEMENT COUNT

Count III of plaintiffs' complaint sounded in commercial disparagement against defendants. Specifically, according to plaintiffs, Zellner's alleged statement to Wendt that plaintiffs had prepared, for $45,000, "five pages of worthless memorandum," was "made maliciously and with the intent to disparage the quality of the services Plaintiffs perform."

There is scant authority regarding the tort of commercial disparagement. Currently, it is disputed as to whether a cause of action for commercial disparagement remains viable in Illinois. See *Barry Harlem Corp.*, 273 Ill. App. 3d at 396, citing *Appraisers Coalition v. Appraisal Institute*, 845 F. Supp. 592, 610 (N.D. Ill. 1994). This court has not recognized such a claim. As we last stated in *Kolegas v. Heftel Broadcasting Corp.*, 217 Ill. App. 3d 803, 810 (1991), *aff'd in part & rev'd in part on other grounds*, 154 Ill. 2d 1 (1992), "[t]he common-law tort known as publication of an injurious falsehood has not been recognized in Illinois. [Citation.] Nor has its subspecies, the tort of commercial disparagement."

However, the Appellate Court, First District, seemingly conditionally recognized the tort of commercial disparagement. According to that court, "plaintiff must show that defendant made false and demeaning statements regarding the quality of another's goods and services" in order to state a claim for commercial disparagement. *Barry Harlem Corp.*, 273 Ill. App. 3d at 396. In *Barry Harlem Corp.*, however, the court did not review the merits of the commercial disparagement claim; rather, it held that, because the plaintiff's complaint failed to state a cause of action for defamation *per se*, it also failed to state a cause of action for commercial disparagement. *Barry Harlem Corp.*, 273 Ill. App. 3d at 396.

Similarly, the Appellate Court, Fourth District, stated that a commercial disparagement claim is one based on "words criticizing the quality of goods or services." *Suhadolnik v. City of Springfield*, 184 Ill. App. 3d 155, 184 (1989). As a prerequisite to a commercial disparagement claim, the court held that a plaintiff must identify a third party with whom the plaintiff had an expectancy of doing business. *Suhadolnik*, 184 Ill. App. 3d at 184. Because the plaintiff's com-

plaint failed to allege a business expectancy with a third party, the court affirmed the dismissal of the commercial disparagement count. *Suhadolnik*, 184 Ill. App. 3d at 184.

Thus, it appears that courts have been hesitant to recognize the tort of commercial disparagement. According to precedent from this district, commercial disparagement is not a viable cause of action. We decline to stray from that precedent in this case. Accordingly, the trial court properly dismissed count III of plaintiffs' complaint.

## 4

## THE EXTORTION AND INTIMIDATION COUNTS

Based on the March 21 letter from Zellner to plaintiffs' attorney, plaintiffs alleged in count IV of their complaint that defendants committed intimidation by mail in violation of sections 12—6(a)(4) and (a)(5) of the Criminal Code of 1961 (Code) (720 ILCS 5/12—6(a)(4), (a)(5) (West 1994)). They further alleged in count V that defendants attempted to extort them, in violation of both the common law and sections 12—6(a)(4) and (a)(5) of the Code (720 ILCS 5/12—6(a)(4), (a)(5) (West 1994)).

 Sections 12—6(a)(4) and (a)(5) of the Code state in relevant part:

> "(a) A person commits intimidation when, with intent to cause another to perform or to omit the performance of any act, he communicates to another, whether in person, by telephone or by mail, a threat to perform without lawful authority any of the following acts:
>
> * * *
>
> (4) Accuse any person of an offense; or
> (5) Expose any person to hatred, contempt, or ridicule ***."
> 720 ILCS 5/12—6(a)(4), (a)(5) (West 1994).

The purpose of the intimidation statute is to prohibit the making of specific threats that are intended to compel others to act against their will. *People v. Byrd*, 285 Ill. App. 3d 641, 647 (1996). "Implicit in the word 'threat' as it is used in the intimidation statute is the requirement that the expression, in its context, has a reasonable tendency to create apprehension that its originator will act according to its tenor." *Byrd*, 285 Ill. App. 3d at 647.

Moreover, "extortion" and "blackmail" are synonymous terms. *People v. Mahumed*, 381 Ill. 81, 84 (1942). "Blackmail" is an "[u]nlawful demand of money or property under threat to do bodily harm, to injure property, to accuse of crime, or to expose to disgraceful defects." Black's Law Dictionary 170 (6th ed. 1990). Finally, setting forth a "hard bargaining position," threatening to institute civil

suits, or declaring "that one intends to use the courts to insist upon what he believes to be his legal rights" are not actionable. *Enslen v. Village of Lombard*, 128 Ill. App. 3d 531, 533 (1984).

In pertinent part, the March 21 letter from Zellner to plaintiffs' attorney states, "My only settlement offer to you in regard to [plaintiffs] is that I will not seek sanctions against you if you do not file this lawsuit. Your clients will be countersued for their fraudulent misrepresentations to this firm about their prior unauthorized practice of law ***." The first part of this letter relative to Zellner not filing a motion for sanctions is not directed at plaintiffs but rather at their attorney. At most, such a statement is a "hard bargaining position" (see *Enslen*, 128 Ill. App. 3d at 533) and certainly does not rise to the level of intimidation, extortion, or blackmail. It represents Zellner's view of the situation at the time—she obviously believed plaintiffs' claims to be frivolous and, as such, had determined that she would seek sanctions against plaintiffs' attorney if he proceeded with such a meritless suit. We are not judging the merits of plaintiffs' underlying billing dispute with defendants as that matter is not before us. We find only that Zellner's statement regarding the filing of a motion for sanctions against plaintiffs' attorney does not constitute intimidation, extortion, or blackmail against plaintiffs.

The second part of the March 21 letter, in which Zellner indicates that she will sue plaintiffs if they proceed with their suit, is likewise not actionable as intimidation, extortion, or blackmail. As we have previously stated, defendants and plaintiffs are equally entitled to threaten to institute civil suits in order to vindicate their rights. See *Enslen*, 128 Ill. App. 3d at 533. Nothing in the record convinces us that defendants made this threat in bad faith or without an honest belief that a cause of action against plaintiffs exists. See *Enslen*, 128 Ill. App. 3d at 533. Therefore, we find no basis in fact for determining that the March 21 letter constitutes an attempt by defendants to intimidate, extort, or blackmail plaintiffs. See *Illinois Graphics*, 159 Ill. 2d at 488 (cause of action should be dismissed under section 2—615 where no set of facts could be proved that entitle nonmovant to relief). Accordingly, we affirm the trial court's dismissal of counts IV and V of plaintiffs' complaint.

We may affirm the trial court on any basis in the record. *Trustees of Wheaton College v. Peters*, 286 Ill. App. 3d 882, 887 (1997). Therefore, because of our holding with respect to counts IV and V, we need not consider plaintiffs' contention that the trial court improperly extended the affirmative defense of absolute privilege to cases involving intimidation and extortion rather than defamation. This contention is irrelevant to our determination because, given the

language of the March 21 letter, there is no set of facts that, if established, would entitle plaintiffs to recovery. See *Illinois Graphics*, 159 Ill. 2d at 488.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed in part and reversed in part, and the cause is remanded for proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

GEIGER, P.J., and DOYLE, J., concur.