AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF LIBERTYVILLE, Defendant-Appellee.

Second District    No. 2—94—0346

Opinion filed January 19, 1995.

Jack M. Siegel, of Altheimer & Gray, of Chicago, for appellants.

Clifford L. Weaver, Peter M. Friedman, and Mark A. Stang, all of Burke, Weaver & Prell, of Chicago, for appellee.

PRESIDING JUSTICE McLAREN delivered the opinion of the court:

On October 26, 1993, the plaintiffs, American National Bank & Trust Company, Amric Development Corporation, and Larry Grossman, filed the present suit (Grossman II) against the defendant, the

Village of Libertyville, seeking a declaration that the zoning ordinance of the village was unconstitutional, invalid, and void because it prevented the plaintiffs from developing single-family residences on a certain parcel of land located within the village, currently zoned "ORD" under the village's ordinance. An "ORD" designation under the Libertyville zoning ordinance does not permit residential development. The plaintiffs further prayed for an injunction against the village from interfering with the construction of single-family residences on the subject property and sought permits and approval of the plat of subdivision, in compliance with the village's subdivision ordinance. In response, the village filed a section 2—619 motion to dismiss the complaint. (735 ILCS 5/2—619 (West 1992).) The trial court granted the village's section 2—619 motion to dismiss based upon the doctrine of *res judicata*, and this appeal followed.

In the trial court's order dismissing the instant suit because of *res judicata*, the trial court referred to a prior judicial determination dismissing a suit brought by Larry Grossman against the Village of Libertyville in 1991 (Grossman I). Grossman I sought specific approval of a planned-unit development (PUD) as well as certain variations from the village's ordinances and a change in the underlying zoning classification for the same parcel of land at issue in Grossman II. The proposed PUD was based upon a 950-foot-long cul-de-sac, substantially greater in length than any cul-de-sac permitted under Libertyville ordinances, and called for 35 "empty nester" lots with 6,000 square feet devoted to each lot. In Grossman I, Grossman presented evidence regarding only the reasonableness of his proposed PUD and sought relief only with respect to the village's rejection of that plan.

On September 11, 1992, the trial court granted the village's section 2—1110 motion to dismiss (735 ILCS 5/2—1110 (West 1992)) at the close of Grossman's case in Grossman I, thus rejecting Grossman's proposed PUD. Grossman filed a motion to reconsider. In response, the village argued the decision to dismiss should be affirmed and also insisted that a conventional "R-5" single-family residential development was never proposed before the trial court in Grossman I, nor could it have been proposed, given that the law requires the exhaustion of local and administrative remedies and Grossman had not proposed a standard "R-5" single-family development to the village. The trial court refused to reconsider its decision in Grossman I. Grossman did not appeal that adjudication.

Grossman alleges he proceeded to market the subject property for "ORD" zoning purposes, but was unable to secure any offers for that use.

On August 27, 1993, the plaintiffs in Grossman II applied for a map amendment with the village, which would reclassify the same parcel of land at issue in Grossman I as an "R-5" district under Libertyville's zoning ordinance. The plaintiffs proposed to develop the subject property with 33 single-family residences located on lots of 10,000 square feet, abutting either an oval street or a shorter street connecting the midpoints of the longer sides of the oval. No cul-de-sacs were part of this single-family residence proposal, and the proposal was in complete accord with the village's standard "R-5" zoning classification of single-family subdivisions.

The plan commission of the village conducted a public hearing on September 27, 1993, at which time the plaintiffs made their presentation of the single-family residence proposal. No objectors appeared in opposition to the plan.

The plan commission recommended that the application for rezoning be denied and the village board subsequently concurred in the recommendation. The instant suit, Grossman II, was filed on November 16, 1993.

The village filed its section 2—619 motion to dismiss the complaint in Grossman II, based upon the doctrine of *res judicata* and the outcome of Grossman I. The trial court granted the section 2—619 motion, despite noting that Grossman's 1991 action was for a PUD and Grossman II involved a conventional R-5 proposed use for the parcel. The trial court also stated that when a zoning classification is challenged twice, the plaintiff has the burden of overcoming the bar of *res judicata* by showing materially changed circumstances since the first judgment. The court found that the plaintiffs in the present case had not met that burden.

■ In making our decision, we are guided by the standards set forth for section 2—619 motions to dismiss (735 ILCS 5/2—619 (West 1992)). Generally, section 2—619 affords a means of obtaining a summary disposition of issues of law or of easily proved issues of fact. (*Kedzie & 103rd Currency Exchange, Inc. v. Hodge* (1993), 156 Ill. 2d 112, 115; *Nikolic v. Seidenberg* (1993), 242 Ill. App. 3d 96, 98.) Section 2—619(a)(4) of the Code of Civil Procedure provides for dismissal if "the cause of action is barred by a prior judgment." (735 ILCS 5/2—619(a)(4) (West 1992).) For purposes of a section 2—619 motion, all well-pleaded facts of the complaint are admitted and taken as true; only the legal sufficiency of the complaint is at issue. (*Bank of Northern Illinois v. Nugent* (1991), 223 Ill. App. 3d 1, 7.) The granting of a section 2—619 motion to dismiss is given *de novo* review on appeal. *Kedzie*, 156 Ill. 2d at 116; *Nikolic*, 242 Ill. App. 3d at 99.

■ In the present case, the trial court granted the village's sec-

tion 2—619 motion pursuant to the doctrine of *res judicata*. *Res judicata* precludes the relitigation of claims or issues previously decided and is divided into two branches: estoppel by judgment, sometimes referred to as *res judicata*, and estoppel by verdict, also known as collateral estoppel. (*Powers v. Arachnid, Inc.* (1993), 248 Ill. App. 3d 134, 137.) Estoppel by judgment has a broad preclusive effect in that a former adjudication on the merits will absolutely bar a subsequent cause of action between the same parties or their privies. (*Downing v. Chicago Transit Authority* (1994), 162 Ill. 2d 70, 73-74; *Powers*, 248 Ill. App. 3d at 137.) Issues actually raised in the first proceeding as well as issues that might have been raised may not be relitigated in a subsequent proceeding. (*Elliott v. LRSL Enterprises, Inc.* (1992), 226 Ill. App. 3d 724, 728.) The narrower branch of *res judicata*, estoppel by verdict or collateral estoppel, bars a party or its privies from relitigating issues essential to, and actually or necessarily decided in, a prior proceeding. *Powers*, 248 Ill. App. 3d at 138; *In re Marriage of Donnellan* (1980), 90 Ill. App. 3d 1032, 1036.

■ Illinois courts have adopted two tests for determining whether causes of action are the same for *res judicata* purposes. Under the "same evidence test," *res judicata* bars a second suit if the evidence needed to sustain the second suit would have sustained the first, or if the same facts were essential to maintain both actions. (*Rodgers v. St. Mary's Hospital* (1992), 149 Ill. 2d 302, 312; *Powers*, 248 Ill. App. 3d at 138.) The "transactional" test considers whether both suits arise from the same transaction, incident, or factual situation. (*Rodgers*, 149 Ill. 2d at 312; *Powers*, 248 Ill. App. 3d at 138.) Under this approach, asserting different types of relief may be considered the same cause of action if a single group of operative facts gives rise to various types of relief. *Rodgers*, 149 Ill. 2d at 312; *Powers*, 248 Ill. App. 3d at 138.

■ Initially, we note that the trial court erred by placing the burden of proof upon the plaintiffs to overcome the bar of *res judicata* by showing materially changed circumstances since the judgment in Grossman I. There is no question that *res judicata* is an affirmative defense. (*Fried v. Polk Brothers, Inc.* (1989), 190 Ill. App. 3d 871, 882.) Therefore, the burden of pleading and proving *res judicata* rests with the defendant. (735 ILCS 5/2—613(d) (West 1992) (providing that defendant must plead "any defense which by *** affirmative matter seeks to avoid the legal effect of or defeat the cause of action set forth in the complaint"); 735 ILCS 5/2—619(a)(9) (West 1992); *People ex rel. Scott v. Chicago Park District* (1976), 66 Ill. 2d 65, 68.) The defendant cites language from a 1971 case which states: "[w]here a zoning classification is twice challenged, *** the doctrine of *res judicata* should

be applied unless plaintiff can show materially changed circumstances." (*Mistretta v. Village of River Forest* (1971), 2 Ill. App. 3d 102, 105.) We refuse to overturn precedent and common sense to read this language to mean the burden of proving *res judicata* rests with the plaintiff in zoning cases. At most, this language allows for a shifting of the burden once the defendant has, *prima facie*, established the elements of *res judicata*. Here, however, the defendant has not sufficiently established its initial burden.

■ Under the "same evidence" test for *res judicata*, the present suit should not have been dismissed. The relief sought in the two suits was sufficiently distinguishable to require different proof and evidence. It is true that both Grossman I and Grossman II sought relief from zoning decisions of the village regarding the same parcel of land. Specifically, however, the plaintiff in Grossman I sought that the zoning ordinance of Libertyville be declared unconstitutional and also that the village be directed to approve the proposed PUD. In order for a court to enjoin the village to approve the plan and also consider the constitutionality of the zoning ordinance, that court must deem the proposed plan reasonable. (*Schultz v. Village of Lisle* (1972), 53 Ill. 2d 39, 41; *Amalgamated Trust & Savings Bank v. County of Cook* (1980), 82 Ill. App. 3d 370, 378.) The plaintiffs in Grossman II similarly sought to have the zoning ordinances of Libertyville declared unconstitutional, but also sought a court declaration on the reasonableness of the proposed single-family residence development, not a PUD, at issue in that suit.

Generally, a PUD differs substantially in form from the more traditional changes in zoning sought in Grossman II. A PUD is a special use which the authorities of a municipality may provide for in the municipality's ordinances. (65 ILCS 5/11—13—1.1 (West 1992).) Planned developments are "specialized rezonings; they amend the zoning map but carry an individualized zoning envelope. Thus a planned development, in effect, is tailor-made zoning." (Thomas, *An Approach to Zoning Analysis and Glossary of Land Use Terminology*, in Illinois Land Use Law ch. 9, § 9.11 (Ill. Inst. for Cont. Legal Educ. 1989).) PUDs allow "planners to mix housing types and also to combine residential, commercial, and industrial uses on the same tract of land." (Kmiec, Zoning and Planning Deskbook § 3.03(5) (1994).) Furthermore:

> "The process of securing a planned development may differ from that of a rezoning. Planned development applications are usually more detailed than rezoning applications, and hearings may be more in-depth, since a unique zoning envelope is being created." (Illinois Land Use Law ch. 9S, § 9.11 (Ill. Inst. for Cont. Legal Educ. 1989, Supp. 1992).)

The creation of PUDs as flexible zoning devices has even prompted one commentator to query if Euclidean zoning was "misdirected from the start." (R. Ellickson & A. Tarlock, Land Use Controls, Cases & Materials 265 (1981).) The very nature of the relief sought in the two suits at issue thus differs. In Grossman I, Grossman sought relief from the village's denial of his proposed PUD. In Grossman II, he sought relief from the village's denial of his proposed conventional rezoning to a single-family residence zone.

Our inspection of the plans submitted demonstrates that Grossman's respective proposals were not different in name alone. The PUD proposed in Grossman I consisted of 35 lots with 6,000 square feet of space on a long cul-de-sac street. By contrast, the rezoning proposed in Grossman II consisted of 33 lots with 10,000 square feet of space on an oval-shaped street structure. Thus, the utilization of the "same evidence" test to determine if the causes of action in Grossman I and Grossman II are the same results in the determination that the plans are sufficiently different so that different evidence would be needed to sustain the two actions.

■ We also reach the same conclusion if we apply the "transactional" test to determine if the causes of action were the same for *res judicata* purposes. Grossman I and Grossman II did not arise from the same transaction, incident, or factual situation (*Rodgers*, 149 Ill. 2d at 312: *Powers*, 248 Ill. App. 3d at 138) for three reasons. First, as discussed above, the PUD at issue in Grossman I is a totally different concept in use than the conventional rezoning proposal at issue in Grossman II. Second, the plaintiffs have pleaded that Grossman unsuccessfully marketed the property under its present zoning classification after the decision to deny the PUD proposed in Grossman I. Third, the plaintiffs have also pleaded that the market demand for property zoned for single-family residences in the area has changed in the time period between Grossman I and Grossman II. For purposes of a section 2—619 motion, these latter two claims must be deemed true. (*Bank of Northern Illinois v. Nugent* (1991), 223 Ill. App. 3d 1, 7.) In zoning cases, "*[r]es judicata* applies even if a different type of relief or damage is sought in the subsequent action *as long as the same set of operative facts give rise to the successive assertions of relief.*" (Emphasis added.) (*Furgatch v. Butler* (1988), 188 Ill. App. 3d 1060, 1065-66.) When considered in total, the three factors listed above illustrate that the claim in Grossman II arose out of a different set of operative facts, despite the fact that Grossman I and Grossman II involve the same parcel of land. Courts have noted that the attempt to apply *res judicata* to zoning cases is difficult because "the facts involved may change over time." (*La Salle National Bank*

*v. County of Du Page* (1979), 77 Ill. App. 3d 562, 565; *Mistretta*, 2 Ill. App. 3d at 104-05.) On the basis of the record before us and the three factors listed above, we determine that the pleadings in Grossman II sufficiently demonstrate a changed factual situation from that present in Grossman I to withstand attack on *res judicata* grounds.

The village claims that the decision we reach in the present case encourages developers to make small changes in and refile plans which have been denied by zoning commissions and subsequently proceed to court. We believe the village overstates the risk involved. Initially, we again refer to the substantial changes from the plan submitted in Grossman I from the plan submitted in Grossman II. Furthermore, our decision today merely allows this particular developer to proceed to have his claim heard by the trial court; success at that level is not guaranteed. Moreover, the village cites no authority, nor is there reason to believe, that developers are particularly fond of litigation.

Finally, to rule as the village wishes on *res judicata* in the instant case ties the hands of property owners who have previously had requests for rezoning denied by their local governing body. As this court noted in *La Salle National Bank*, if *res judicata* were to be applied strictly in zoning cases, the doctrine "could result in land being tied up in a given use long after the area surrounding it has changed." (*La Salle National Bank*, 77 Ill. App. 3d at 565.) We refuse to endorse the argument of the village based upon the different evidence and relief sought in this instance. Whether the plaintiff will prevail on the merits at trial remains to be seen. However, the plaintiffs should not have had their complaint in Grossman II dismissed under section 2—619 (735 ILCS 5/2—619 (West 1992)) due to the doctrine of *res judicata*.

The judgment of the circuit court of Lake County is reversed, and the cause is remanded for further proceedings consistent with this disposition.

Reversed and remanded.

THOMAS and HUTCHINSON, JJ., concur.