651 N.E.2d 231 (1995)
272 Ill. App.3d 246
209 Ill.Dec. 303
Cecelia KUBIAN, Indiv., and as next of kin of Frank Kubian, Deceased, Plaintiff-Appellant,
v.
ALEXIAN BROTHERS MEDICAL CENTER, Hospice Care, Inc. et al., Defendants-Appellees.
No. 2-94-0997.
Appellate Court of Illinois, Second District.
May 4, 1995.
*233 Allan J. Marco, Frank A. Marco, Marco & Stefanos, Downers Grove, for Cecelia Kubian.
John E. Norton, Denis K. Sheehan, O'Reilly, Cunningham, Norton & Mancini, Wheaton, for Alexian Brothers Medical Ctr.
Joyce E. Zupancic, Broderick, Steiger & Zupancic, Chicago, for Hospice Care, Inc.
James T. Ferrini, Edward M. Kay, Clausen, Miller, Gorman, Caffrey & Witous, Chicago, for Herbert J. Reisel MD.
Presiding Justice McLAREN delivered the opinion of the court:
The plaintiff, Cecelia Kubian, filed a complaint against the defendants, Alexian Brothers Medical Center (Alexian Center), Hospice Care, Inc. (Hospice Care), and Dr. Herbert Reisel, which included counts for wrongful death and for loss of consortium. The trial court granted the defendants' section 2-615 motion (735 ILCS 5/2-615 (West 1992)) to dismiss some of the plaintiff's counts, including the loss of consortium count, on February 24, 1992. Subsequently, the plaintiff amended her complaint, and the defendants, for the second time, filed motions to dismiss the remaining counts. As a consequence, the plaintiff filed her second amended complaint. Subsequently, the defendants, for the third time, filed motions to dismiss, this time pursuant to section 2-619(a)(2) (735 ILCS 5/2-619(a)(2) (West 1992)), though defendant Reisel filed a motion for summary judgment (735 ILCS 5/2-1005 (West 1992)), not a section 2-619 motion (735 ILCS 5/2-619 (West 1992)). The trial court granted the defendants' motion to dismiss the wrongful death count pursuant to section 2-619. 735 ILCS 5/2-619 (West 1992).
The issues on appeal are whether the trial court erred in dismissing the plaintiff's wrongful death count pursuant to section 2-619 (735 ILCS 5/2-619 (West 1992)) and whether the plaintiff's loss of consortium count, dismissed pursuant to section 2-615 (735 ILCS 5/2-615 (West 1992)), should be reinstated. We affirm in part, reverse in part, and remand.
The facts in this case are undisputed. The plaintiff's spouse, Frank Kubian, was transported to the Alexian Center on March 7, 1991, where Kubian was under the care of Dr. Reisel. Kubian remained under Reisel's care in an intensive care unit until Reisel signed a "do not resuscitate" order (DNR) on March 12, 1991, at which time Reisel also authorized a transfer of Kubian to the Hospice Care Unit, located within the Alexian Center facility. On March 13, 1991, a few hours after being transferred to the Hospice Care Unit, Frank Kubian died.
The DNR order and the transfer of Frank Kubian to the Hospice Care Unit were made with the written consent of Priscilla Pisarski, the deceased's daughter from a marriage previous to his union with the plaintiff. No informed consent declaration was given, however, from either Frank Kubian or the plaintiff, who had been married to Kubian for 12 years and was present at the hospital when Pisarski signed the consent forms. The plaintiff alleges that hostile feelings existed between the plaintiff and Pisarski.
On March 13, 1991, Rose Hutchison, a registered nurse, stated in an "Inpatient Unit Interdisciplinary note":
"FRANK KUBIAN was unable to sign all papers due to deterioration and weakness and the daughter signed all of the papers, because:
i. The daughter signed instead of the wife because they have a marriage agreement that they will be responsible for their own medical expenses.
ii. This is a second marriage."
The "marriage agreement" to which the nurse referred is an antenuptial agreement between Frank Kubian and the plaintiff, entered into on May 16, 1979. The agreement provides that the plaintiff would not make a claim as to any part of her spouse's estate and that she waives:
"[A]ll right of courtesy [sic ], dower, statutory fee, homestead, surviving spouse's award, right to renounce the will of the husband, or other right in and to the property real or personal, which the Husband[ ] now owns."
The agreement did not specifically mention consortium or loss thereof.
*234 Frank Kubian's will, dated May 29, 1981, with an attached codicil dated December 16, 1988, ratified the antenuptial agreement and appointed Priscilla Pisarski as executor of the estate. The will provided that the administrator of the estate had the power to "compromise, contest, prosecute or abandon" claims of Frank Kubian's estate.
Following Frank Kubian's death, Pisarski opened an estate in the probate division of the eighteenth judicial circuit. During the pendency of the estate of Frank Kubian, the plaintiff signed an agreement waiving her rights in the estate, waiving any right "she had, now has, or may hereafter acquire against the Estate," and ratifying the antenuptial agreement. Pisarski did not file a wrongful death claim on behalf of the estate before the estate was closed in the probate court on January 29, 1992.
When the estate was still open, however, the plaintiff filed the lawsuit at issue in the present case in an individual capacity on October 17, 1991. The gravamen of the plaintiff's suit is that the defendants improperly obtained consent to relinquish life support from Frank Kubian's daughter, Priscilla Pisarski, rather than his wife, the plaintiff, and thereby failed to obtain proper consent.
The standards guiding our review of the trial court's decision to grant the defendant's section 2-619 motion (735 ILCS 5/2-619 (West 1992)) to dismiss the plaintiff's wrongful death count are clear. Generally, section 2-619 (735 ILCS 5/2-619 (West 1992)) affords a means of obtaining a summary disposition of issues of law or easily proved issues of fact. (Kedzie & 103rd Currency Exchange, Inc. v. Hodge (1993), 156 Ill.2d 112, 115, 189 Ill.Dec. 31, 619 N.E.2d 732; Johnson v. Du Page Airport Authority (1994), 268 Ill.App.3d 409, 414, 206 Ill.Dec. 34, 644 N.E.2d 802.) Section 2-619(a)(2) of the Code of Civil Procedure provides for dismissal if "the plaintiff does not have the legal capacity to sue." (735 ILCS 5/2-619(a)(2) (West 1992).) For purposes of a section 2-619 motion (735 ILCS 5/2-619 (West 1992)), all well-pleaded facts in the complaint are deemed admitted and only the legal sufficiency of the complaint is at issue. (American National Bank & Trust Co. v. Village of Libertyville (1995), 269 Ill.App.3d 400, 403, 206 Ill.Dec. 761, 645 N.E.2d 1013.) The granting of a section 2-619 motion to dismiss (735 ILCS 5/2-619 (West 1992)) is given de novo review on appeal. Kedzie & 103rd Currency Exchange, Inc., 156 Ill.2d at 116, 189 Ill.Dec. 31, 619 N.E.2d 732; Johnson, 268 Ill.App.3d at 414, 206 Ill.Dec. 34, 644 N.E.2d 802.
With these concepts in mind, we determine that the trial court's decision to grant dismissal of the plaintiff's wrongful death count pursuant to section 2-619 (735 ILCS 5/2-619 (West 1992)) was not an abuse of discretion. During proceedings before the trial court, the plaintiff sought to be appointed as a special administrator of Frank Kubian's estate. The Wrongful Death Act, in regard to the appointment of a special administrator, reads:
"In the event that the only asset of the deceased estate is a cause of action arising under this Act, and no petition for letters of office for his or her estate has been filed, the court * * * may appoint a special administrator for the deceased party for the purpose of prosecuting or defending the action." (Emphasis added.) (740 ILCS 180/2.1 (West 1992).)
Thus, by the very terms of the statute upon which she seeks appointment, the trial court was not authorized to appoint the plaintiff as a special administrator because letters of office for Frank Kubian's estate had already been filed as of March 21, 1991, and the estate contained approximately $33,000 worth of assets as of October 17, 1991, the date the plaintiff filed her suit.
Analysis of the case law regarding estates and the appointment of special administrators also leads us to determine that the dismissal of the wrongful death count and the denial to appoint the plaintiff special administrator were not abuses of discretion. In In re Estate of Faught (1983), 111 Ill. App.3d 1043, 1045, 67 Ill.Dec. 762, 445 N.E.2d 54, the appellate court noted that nothing in section 2.1 of the Wrongful Death Act (Ill.Rev.Stat.1981, ch. 70, par. 2.1 (now codified, as amended, at 740 ILCS 180/2.1 (West 1992))) serves to abrogate the provisions of the Probate Act of 1975 (Ill.Rev.Stat. *235 1981, ch. 110½, par. 10-5 (now 755 ILCS 5/10-5 (West 1992))) concerning the temporary status of an administrator to collect. Therefore, the powers and the duties of a special administrator are strictly limited to those prescribed by the wrongful death statute (Ill.Rev.Stat.1981, ch. 70, par. 2.1 (now codified, as amended, at 740 ILCS 180/2.1 (West 1992))), and the special administrator's authority ceases upon issuance of the letters testamentary. (Estate of Faught, 111 Ill. App.3d at 1045, 67 Ill.Dec. 762, 445 N.E.2d 54.) Likewise, in In re Estate of Redeker (1991), 210 Ill.App.3d 769, 772, 155 Ill.Dec. 199, 569 N.E.2d 199, the court also concluded that, once a petition for issuance of letters of administration had been filed, the trial court no longer had the authority to appoint a special administrator for the purpose of prosecuting a wrongful death action.
The plaintiff relies upon Johnson v. Village of Libertyville (1986), 150 Ill.App.3d 971, 104 Ill.Dec. 211, 502 N.E.2d 474, for her argument that she should have been appointed a special administrator. In Johnson, the court appointed the parents of the deceased as special administrators and allowed the parents to intervene in a wrongful death action to pursue their loss of society claim where it was shown that "the administrator [had] acted in a manner indicating he would not adequately represent the interests of the next of kin." (150 Ill.App.3d at 978, 104 Ill.Dec. 211, 502 N.E.2d 474.) In the present case, the plaintiff has alleged that the administrator of her husband's estate was "hostile to and would not represent the interest of" the plaintiff. For purposes of a section 2-619 motion (735 ILCS 5/2-619), we must deem this allegation true. American National Bank & Trust Co., 269 Ill.App.3d at 403, 206 Ill.Dec. 761, 645 N.E.2d 1013.
Assuming arguendo that the administrator did not adequately represent the plaintiff's interests, the plaintiff has still not established that she should or could have been appointed special administrator. In Johnson, the parents petitioned to intervene in a timely mannerbefore the estate had been closed. (150 Ill.App.3d at 975, 104 Ill.Dec. 211, 502 N.E.2d 474.) This is not true in the instant case, where the plaintiff slept on her rights in the probate proceedings. The trial court correctly stated the proper procedure that the plaintiff should have followed in its opinion letter, which stated:
"At no time did the spouse who is the Plaintiff here, ask[ ] the daughter who was serving as the executor to file a suit on behalf of the next of kin. * * * [U]pon the executor's refusal to do so, then the probate court should have been asked to order her [the daughter] to do so or remove her [the daughter] as the executor and appoint someone who would * * *, assuming the probate court felt the claim was meritorious."
Instead, the plaintiff deliberately avoided the probate court, letting the estate close and, despite the clear terms of the Wrongful Death Act barring the appointment of a special administrator where letters of testamentary have been filed (740 ILCS 180/2.1 (West 1992)), pursued her claims in the trial court below.
The plaintiff attempts to avoid her procedural errors by asking the trial court, and now this court, to apply the "relation back" doctrine to her claim of being appointed a special administrator. The decision to allow an amendment under section 2-616 (735 ILCS 5/2-616 (West 1992)) rests within the sound discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion. (Indiana Insurance Co. v. Hydra Corp. (1993), 245 Ill.App.3d 926, 932, 185 Ill.Dec. 775, 615 N.E.2d 70.) We determine the trial court's decision to deny this attempt was not an abuse of discretion. One of the factors to be considered in our determination of whether the trial court's denial of the "relation back" motion of the plaintiff (735 ILCS 5/2-616 (West 1992)) was an abuse of discretion is whether the proposed amendment could cure the defective pleading. (Luciano v. Waubonsee Community College (1993), 245 Ill.App.3d 1077, 1087, 185 Ill.Dec. 463, 614 N.E.2d 904.) In the present case, allowing the plaintiff to petition the trial court or the probate court for appointment as special administrator at the time she filed her case would not cure the defect for, at the time that the plaintiff filed her complaint on October 17, 1991, Priscilla *236 Pisarski had already received letters of office of the decedent's estate and opened the estate on April 11, 1991. Once a petition for issuance of letters of administration of a decedent's estate has been filed, the trial court no longer has the authority to appoint a special administrator for the purpose of prosecuting a wrongful death action. (Estate of Redeker, 210 Ill.App.3d at 772, 155 Ill.Dec. 199, 569 N.E.2d 199.) Moreover, at the time the plaintiff filed her original complaint, the estate had assets of approximately $33,000. Consequently, the Wrongful Death Act would not allow appointment of a special administrator. (740 ILCS 180/2.1 (West 1992).) Additionally, the executrix of Frank Kubian's estate, Priscilla Pisarski, possessed the sole authority to control any litigation on behalf of the estate (Addison v. Health & Hospital Governing Comm'n (1977), 56 Ill.App.3d 533, 535, 14 Ill.Dec. 7, 371 N.E.2d 1060), at least in the absence of minor beneficiaries (Girman v. County of Cook (1981), 103 Ill.App.3d 897, 59 Ill.Dec. 534, 431 N.E.2d 1291). Pisarski made the decision not to pursue a wrongful death action. The "relation back" doctrine does not, therefore, cure the plaintiff's procedural miscues.
Turning now to the other issue of contention on this appeal, we determine that the plaintiff's loss of consortium claim should be allowed to proceed. An action for loss of consortium has long been recognized in this State as a common-law cause of action. (See Dini v. Naiditch (1960), 20 Ill.2d 406, 421-30, 170 N.E.2d 881; Martin v. Kiendl Construction Co. (1982), 108 Ill.App.3d 468, 475, 63 Ill.Dec. 824, 438 N.E.2d 1187 (Rizzi, J., dissenting).) Consortium consists of several elements, encompassing not only material services, including the loss of financial support from the impaired or deceased spouse (Schrock v. Shoemaker (1994), 159 Ill.2d 533, 544, 203 Ill.Dec. 787, 640 N.E.2d 937), but also including "elements of companionship, felicity and sexual intercourse, all welded into a conceptualistic unity" (Dini, 20 Ill.2d at 427, 170 N.E.2d 881; see also Dralle v. Ruder (1988), 124 Ill.2d 61, 72, 124 Ill.Dec. 389, 529 N.E.2d 209).
Initially, we note that the plaintiff did not waive her right to pursue a loss of consortium claim in her antenuptial agreement with Frank Kubian or in the agreement she signed during the pendency of the probate proceedings. Loss of consortium is not listed among the rights that the plaintiff agreed to waive in the antenuptial agreement. Furthermore, a loss of consortium claim belongs to the surviving spouse, not the deceased one. (Brown v. Metzger (1984), 104 Ill.2d 30, 38-39, 83 Ill.Dec. 344, 470 N.E.2d 302.) Neither the antenuptial agreement provision that the plaintiff would not make a claim as to "any part of her spouse's estate" (emphasis added) nor the plaintiff's assent to waive any right "she had, now has, or may hereafter acquire against the Estate" (emphasis added) affects the survival of the plaintiff's loss of consortium claim.
Our supreme court has been troubled by the potential for "double recovery," since loss of financial support from an injured or deceased spouse can be recovered under the Wrongful Death Act (Elliott v. Willis (1982), 92 Ill.2d 530, 540, 65 Ill.Dec. 852, 442 N.E.2d 163), Structural Work Act (Schrock, 159 Ill.2d at 544, 203 Ill.Dec. 787, 640 N.E.2d 937), Workers' Compensation Act (Schrock, 159 Ill.2d at 545, 203 Ill.Dec. 787, 640 N.E.2d 937; 820 ILCS 305/7(a), 8(b) (West 1992)), personal injury actions brought by the injured spouse (Brown, 104 Ill.2d 30, 83 Ill. Dec. 344, 470 N.E.2d 302), and from his or her common-law action for loss of consortium (Dini, 20 Ill.2d at 430, 170 N.E.2d 881; Schrock, 159 Ill.2d at 546, 203 Ill.Dec. 787, 640 N.E.2d 937). The present case concerns a loss of consortium claim in light of a potential Wrongful Death Act claim, an issue our supreme court has directly examined on three occasions. (Hall v. Gillins (1958), 13 Ill.2d 26, 147 N.E.2d 352; Knierim v. Izzo (1961), 22 Ill.2d 73, 174 N.E.2d 157; Elliott, 92 Ill.2d 530, 65 Ill.Dec. 852, 442 N.E.2d 163.) The two most recent opinions of our supreme court, however, concerning the potential for double recovery with a loss of consortium claim (Brown, 104 Ill.2d 30, 83 Ill.Dec. 344, 470 N.E.2d 302; Schrock, 159 Ill.2d 533, 203 Ill.Dec. 787, 640 N.E.2d 937) do not confine themselves to consortium claims in conjunction with either personal injury actions (Brown, 104 Ill.2d 30, 83 Ill.Dec. 344, 470 *237 N.E.2d 302) or claims arising under the Structural Work Act (Schrock, 159 Ill.2d 533, 203 Ill.Dec. 787, 640 N.E.2d 937) and also have relevancy to the instant case. Indeed, Brown (104 Ill.2d 30, 83 Ill.Dec. 344, 470 N.E.2d 302) and Schrock (159 Ill.2d 533, 203 Ill.Dec. 787, 640 N.E.2d 937) (an opinion issued after the parties had turned in their briefs for this appeal) bolster our interpretation of Hall (13 Ill.2d 26, 147 N.E.2d 352), Knierim (22 Ill.2d 73, 174 N.E.2d 157), and Elliott (92 Ill.2d 530, 65 Ill.Dec. 852, 442 N.E.2d 163) and control our determination in this matter. The defendants' sole reliance upon Hall (13 Ill.2d 26, 147 N.E.2d 352), Knierim (22 Ill.2d 73, 174 N.E.2d 157), and Elliott (92 Ill.2d 530, 65 Ill.Dec. 852, 442 N.E.2d 163) is therefore misplaced.
Assuming arguendo that Hall (13 Ill.2d 26, 147 N.E.2d 352), Knierim (22 Ill.2d 73, 174 N.E.2d 157), and Elliott (92 Ill.2d 530, 65 Ill.Dec. 852, 442 N.E.2d 163) solely determine our decision on whether the trial court erred by dismissing the plaintiff's loss of consortium claim, the plaintiff's loss of consortium action should still be allowed to proceed. In Hall and Knierim, the supreme court denied the plaintiffs an opportunity to bring common-law counts similar to the one in the case at bar. (Hall, 13 Ill.2d at 27, 147 N.E.2d 352 ("destruction of the family unit"); Knierim, 22 Ill.2d at 82-83, 174 N.E.2d 157 (loss of consortium).) In Elliott, the supreme court, following a trend to expand the scope of injury recoverable under wrongful death statutes to encompass nonmonetary losses (Bullard v. Barnes (1984), 102 Ill.2d 505, 513-14, 82 Ill.Dec. 448, 468 N.E.2d 1228), determined that loss of consortium is compensable as a "pecuniary injury" under the Wrongful Death Act (740 ILCS 180/2 (West 1992)) and commented in obiter dicta on the rationale behind Hall (13 Ill.2d 26, 147 N.E.2d 352) and Knierim (22 Ill.2d 73, 174 N.E.2d 157): "[I]t is apparent that the court denied the common law counts in both actions because the remedy available in the preemptive wrongful death statute allowed compensation for the injuries alleged." Elliott, 92 Ill.2d at 536, 65 Ill.Dec. 852, 442 N.E.2d 163.
Our supreme court cites no authority in Elliott (92 Ill.2d 530, 65 Ill.Dec. 852, 442 N.E.2d 163), other than Hall (13 Ill.2d 26, 147 N.E.2d 352) and Knierim (22 Ill.2d 73, 174 N.E.2d 157), for its assertion that the Wrongful Death Act preempts the common law, and closer inspection of Hall and Knierim reveals that neither case stands for such a broad proposition. In Hall, a mother and her son sued for deprivation of "the support, companionship, guidance, advice, and affection of the husband and father." (13 Ill.2d at 27, 147 N.E.2d 352.) The Hall court refused to "recogniz[e] a new remedy" (13 Ill.2d at 32, 147 N.E.2d 352) which was "distinct and wholly different" (13 Ill.2d at 27, 147 N.E.2d 352) from those available at that time, and affirmed a dismissal of the plaintiff's case. We note that the right to sue for loss of consortium was not conferred by the supreme court upon women until two years after the Hall decision. (See Dini, 20 Ill.2d at 430, 170 N.E.2d 881.) Furthermore, the right of children to sue for the loss of society and companionship resulting from fatal injuries to their parents is unclear even today, for courts have specifically denied a child's right to recover in light of nonfatal injuries. (Dralle, 124 Ill.2d at 65, 124 Ill.Dec. 389, 529 N.E.2d 209.) Thus, Hall (13 Ill.2d 26, 147 N.E.2d 352) does not support a finding of Wrongful Death Act preemption over common-law claims.
Likewise, Knierim (22 Ill.2d 73, 174 N.E.2d 157) also does not support such a finding. In Knierim, the plaintiff filed one count against defendant Izzo pursuant to the Wrongful Death Act and another count against Izzo for loss of consortium. (22 Ill.2d at 81, 174 N.E.2d 157.) The Knierim court posited that, because the "husband-wife relationship" (22 Ill.2d at 81, 174 N.E.2d 157) is protected under the Wrongful Death Act and because of the Hall decision, which "concluded that the differences between the common-law death action sought to be maintained and the action that is available under the Wrongful Death Act were not sufficiently significant to warrant recognition of a new remedy" (emphasis added) (22 Ill.2d at 82, 174 N.E.2d 157), the differences between a widow's action for loss of consortium and an action for pecuniary loss under the Wrongful Death Act *238 are not sufficiently significant to recognize a loss of consortium action as an "additional remedy" available to the widow (emphasis added) (22 Ill.2d at 83, 174 N.E.2d 157). Thus, Knierim (22 Ill.2d 73, 174 N.E.2d 157) holds that a widow is precluded from bringing her loss of consortium count as an additional remedy when she also filed a count arising from the Wrongful Death Act. The two counts were seen as "overlapping alternatives." (Elliott v. Willis, (1980) 89 Ill. App.3d 1144, 1147, 45 Ill.Dec. 287, 412 N.E.2d 638 (discussing Knierim), rev'd (1982), 92 Ill.2d 530, 65 Ill.Dec. 852, 442 N.E.2d 163.) Knierim should not be construed as holding that the Wrongful Death Act obviates or preempts the common-law claim of loss of consortium. Rather, the presence of a Wrongful Death Act count would make a loss of consortium claim superfluous. Consequently, the plaintiff's loss of consortium claim in the instant case, in the absence of a cause of action under the Wrongful Death Act, should be allowed to proceed.
Our interpretation of Hall (13 Ill.2d 26, 147 N.E.2d 352) and Knierim (22 Ill.2d 73, 174 N.E.2d 157) above is bolstered by the supreme court's holding in Brown v. Metzger (104 Ill.2d 30, 83 Ill.Dec. 344, 470 N.E.2d 302), where the court was concerned about a potential double recovery where an injured spouse settled his personal injury claim but his spouse subsequently sued the same defendant for loss of consortium. The Brown court changed the "simple adjustment of damages" rule laid out in Dini (20 Ill.2d at 427, 170 N.E.2d 881) to handle the double recovery problem: "[W]e now conclude that the most efficient way to preclude double-recovery problems is to require that the loss-of-consortium action be joined, whenever possible, with the impaired spouse's cause of action." (104 Ill.2d at 35, 83 Ill.Dec. 344, 470 N.E.2d 302.) The supreme court thus implicitly acknowledged the continued existence of the common-law right to loss of consortium. The defendants argue that Brown (104 Ill.2d 30, 83 Ill.Dec. 344, 470 N.E.2d 302) does not apply to Wrongful Death Act cases. However, Brown refers to "the impaired spouse's cause of action" (104 Ill.2d at 35, 83 Ill.Dec. 344, 470 N.E.2d 302) and a claim made under the Wrongful Death Act is made on behalf of the decedent-spouse by his personal representative (740 ILCS 180/2 (West 1992)). Moreover, in Schrock, the supreme court acknowledged that the Brown mandatory joinder rule (104 Ill.2d at 35, 83 Ill.Dec. 344, 470 N.E.2d 302) would apply to wrongful death actions by adding the words "or deceased" after the word "impaired." 159 Ill.2d at 546, 203 Ill.Dec. 787, 640 N.E.2d 937.
Having determined that the plaintiff has a valid independent cause of action under the common law for loss of consortium, we now need to address whether the plaintiff fulfilled the mandatory joinder requirement laid out in Brown (104 Ill.2d at 35, 83 Ill.Dec. 344, 470 N.E.2d 302) and Schrock (159 Ill.2d at 546, 203 Ill.Dec. 787, 640 N.E.2d 937). The plaintiff's complaint contained one count for wrongful death and another count for loss of consortium. Initially, the trial court correctly dismissed the loss of consortium count, which should have originally been joined with the plaintiff's wrongful death count. (Brown, 104 Ill.2d at 35, 83 Ill.Dec. 344, 470 N.E.2d 302; Schrock, 159 Ill.2d at 546, 203 Ill.Dec. 787, 640 N.E.2d 937.) However, once the trial court properly dismissed the plaintiff's wrongful death count, the trial court should have severed the loss of consortium claim from the wrongful death count, particularly because the trial court's earlier decision ordered the consortium count joined with the wrongful death count. Alternatively, the trial court could have waited to rule upon the defendants' section 2-615 motion (735 ILCS 5/2-615 (West 1992)) for dismissal of the plaintiff's loss of consortium claim until after ruling upon the defendants' motion for dismissal of the wrongful death count. By, first, dismissing the plaintiff's loss of consortium claim because of the mandatory joinder rule and, secondly, dismissing the plaintiff's wrongful death claim without severing the loss of consortium claim, the trial court denied the plaintiff the opportunity to bring her common-law cause of action for loss of consortium. The Illinois Constitution states: "Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation." (Ill. Const.1970, art. I, § 12.) *239 Thus, the mandatory joinder rule was satisfied initially when the trial court ordered the loss of consortium count dismissed because it was duplicative. However, the dismissal on the pleadings of the wrongful death count mooted the necessity for mandatory joinder, and the plaintiff should be allowed to proceed with her common-law cause of action for loss of consortium in the present case.
Finally, the plaintiff, in the conclusion to her appellate brief, asks this court to reinstate a count for battery which was part of her complaint. The plaintiff did not, however, argue the merits for reinstatement of the battery count in her appellate brief. Therefore, this issue has been waived. Hutchings v. Bauer (1991), 212 Ill.App.3d 172, 183, 156 Ill.Dec. 582, 571 N.E.2d 169 ("points raised but not argued or supported with authority in a party's brief are also deemed waived for purposes of review"), rev'd on other grounds (1992), 149 Ill.2d 568, 174 Ill.Dec. 850, 599 N.E.2d 934; 134 Ill.2d R. 341(e)(7).
In summary, in the Illinois Supreme Court's earlier decisions involving a loss of consortium count in light of a potential wrongful death action, the common-law cause of action for loss of consortium was not destroyed by the wrongful death count but rather was rendered superfluous by the presence of the wrongful death action. (Hall, 13 Ill.2d 26, 147 N.E.2d 352; Knierim, 22 Ill.2d 73, 174 N.E.2d 157; Elliott, 92 Ill.2d 530, 65 Ill.Dec. 852, 442 N.E.2d 163.) In more recent opinions concerning loss of consortium and potential "double recovery" situations, our supreme court has specified that a loss of consortium action be joined, whenever possible, with the impaired or deceased spouse's cause of action. (Brown, 104 Ill.2d at 35, 83 Ill.Dec. 344, 470 N.E.2d 302; Schrock, 159 Ill.2d at 546, 203 Ill.Dec. 787, 640 N.E.2d 937.) Because we determine that the dismissal on the pleadings of the wrongful death action mooted the necessity for mandatory joinder, the plaintiff in the case at bar should be allowed to proceed with her common-law cause of action for loss of consortium.
For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed in part and reversed in part, and the cause is remanded.
Affirmed in part; reversed in part and remanded.
INGLIS and RATHJE, JJ., concur.