2025 IL App (1st) 241801-U

No. 1-24-1801

Order Filed September 23, 2025

SECOND DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| JASMINE ELYCE LAWSON, | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 2024 L 000305 |
| | ) | |
| THE NORTHERN TRUST COMPANY and JEAN | ) | |
| ANN ADAMS, | ) | Honorable |
| | ) | Patrick Sherlock, |
| Defendants | ) | Judge, presiding. |
| | ) | |
| (The Northern Trust Company, Defendant-Appellee). | ) | |

JUSTICE D.B. WALKER delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Plaintiff's claims are barred by the doctrine of *res judicata*. Accordingly, the circuit court's order granting defendant's motion to dismiss was appropriate. Affirmed.

¶ 2    This appeal comes before this court on review of the circuit court's decision to grant a motion to dismiss filed by defendant The Northern Trust Company (Defendant). Defendant served as the trustee for Plaintiff Jasmine Elyce Lawson's estate which resulted from a

settlement agreement with a healthcare provider after she was permanently injured at the time of her birth. Plaintiff alleged breach of fiduciary duty, fraudulent inducement, and gross negligence on defendant's part. Defendant asserted in a motion to dismiss, and the circuit court agreed, that plaintiff's claims against defendant were all barred by the doctrine of *res judicata*. We affirm the circuit court's order granting defendant's motion to dismiss.

¶ 3                                    I. BACKGROUND

¶ 4        On January 8, 2024, plaintiff filed a verified complaint against defendant and guardian *ad litem* Jean Ann Adams (GAL). As the counts against the GAL were later voluntarily dismissed, we will only recount the facts relevant to the counts against defendant. This case comes before us after the circuit court granted defendant's motion to dismiss pursuant to section 2-619, which takes as true all well-pleaded allegations. 735 ILCS 5/2-619 (West 2022); *Doe v. University of Chicago Medical Center*, 2015 IL App (1st) 133735, ¶ 4. Accordingly, we will only concern ourselves with those facts alleged by plaintiff in her complaint.

¶ 5        Plaintiff alleged that she was born January 10, 2001. She was injured during her birth by the delivering physician, suffering a "permanent brachial plexus injury." Plaintiff received a $3 million settlement from the resultant medical malpractice suit. A guardianship proceeding was initiated to establish management of plaintiff's estate for the period of time during which she was a minor. Settlement funds of $1,048,568 were turned over to defendant "with the intent being for [defendant] to manage and increase the value of the Estate for the benefit of the minor Plaintiff, and so that the estate funds would last for the Plaintiff's lifetime." In her first count against defendant, plaintiff alleged that defendant breached its fiduciary duty by mismanaging the funds entrusted to it.

¶ 6        Defendant submitted annual reports on plaintiff's account activity, with the first covering the period of December 5, 2003 through December 31, 2004. The value of the estate as of December 31, 2004 was $961,198.96. Defendant invested $175,121.93 of the estate's funds in "numerous stocks including insurance and pharmaceutical stocks." Plaintiff specifically highlighted the purchase and subsequent sale within six months of 200 shares of American International Group (commonly known as AIG) "at losses of between $14.19 and $17.54 per share," as well as a similar six-month gap between purchase and sale of 200 shares of "Forest Lab Inc Com" at a loss of between $17.12 and $26.14 per share. All of those purchases and sales were within the time span covered by the first account. The account balance was $932,353.80 as of the second report, which covered the year 2005.

¶ 7        In 2007, defendant disbursed $200,000 to assist plaintiff's parents in purchasing a home. Shortly thereafter, plaintiff requested that defendant replace the attorney who had been managing the estate, Michael Blattner, "because he constantly approved the accountings despite the substantial losses set forth above, and as he exhibited a very disrespectful attitude toward Plaintiff's mother when she asked questions and for explanations as to why the estate continue[d to] suffer substantial losses." Defendant replaced Blattner with James Tozzi.

¶ 8        The estate began 2010 valued at $832,875.25 and ended 2010 at $651,912.99. At the end of 2011, the account was valued at $455,641.93. The 2015 accounting showed the account ending the year at a value of $366,495.49. At the end of 2016, the value was $355,842.02. Plaintiff's complaint did not include any information on the value of the account between the end of 2016 and the final accounting, which covered the final period ending on the day plaintiff reached 18 years of age: January 10, 2019.

¶ 9        Plaintiff's complaint alleged, without further elaboration, that the petitions for fees that accompanied the annual accounts "reveal the repeated payment of commissions to the same brokerage entities such as Smith Barney and other brokers." Plaintiff's parents brought "these losses and matters to the attention of the GAL with repeated requests to cause the losses to cease and request court oversight and review of [defendant's] actions." The GAL "refused to do so." "Plaintiff later learned that the GAL did substantial business with [defendant], and her conduct demonstrated that her loyalties were to [defendant] and not plaintiff."

¶ 10       After the GAL refused to act on plaintiff's parents' concerns, plaintiff's mother raised the concerns with Kristin Mastchke Weaver, an employee of defendant who served as the guardian of the estate. Shortly thereafter, Weaver was replaced with Migdalia Coleman as a point of contact and Ray J. Koenig, Jr. (Koenig) took over as defendant's attorney for the estate, replacing James Tozzi. Around the same time that this change occurred, plaintiff's mother "was then told by [defendant's employee] Wayne Madsen that [defendant] would no longer speak with plaintiff's mother or her ex-husband and that any request had should [*sic*] go through the probate attorney." Koenig "told plaintiff's mother to 'back off' and stop objecting to the annual accounting and asking for independent review of plaintiff's estate or he would 'eat her money up in court fees and she would have nothing by the time she turned 18.' " Plaintiff's complaint further alleged that Koenig and the GAL made "false accusations against plaintiff's mother before the judge in apparent retaliation *** while also publicly humiliating plaintiff's mother by filing a libelous document with the Cook County Recorder of Deeds Office *** and repeatedly subjecting plaintiff's mother to court proceedings grounded in the false accusations." The complaint concluded that these actions were an "attempt to 'bully'

plaintiff's mother to stop seeking oversight and an independent review of [defendant's] actions."

¶ 11 Plaintiff's complaint also alleged, as part of Count I, breach of fiduciary duty in the form of defendant's failure to adequately defend plaintiff's interest in the home that the estate helped purchase, once that home went into foreclosure. Plaintiff and her mother became aware that plaintiff's father had failed to make payments and had allowed the home to go into foreclosure. He approached defendant to request that the estate make the necessary payments to rectify the arrearage and the GAL was once again appointed to make that request of the court on plaintiff's behalf. Defendant hired attorney Derek Samz (Samz), on plaintiff's mother's recommendation, to defend plaintiff's interest in the home in the ensuing foreclosure action. The GAL advised plaintiff's mother not to move back into the house and that she would seek funds from the estate to pay the rent for the apartment in which plaintiff and her mother were residing. The GAL advised that "she would petition the court to short sell the house and after a year she would petition the court to purchase a townhouse for plaintiff and her mother." Plaintiff's mother "advised [the GAL] that she did not consent to or desire a short sale, and if the arrearage was paid that plaintiff's mother could afford to pay the mortgage."

¶ 12 The court approved plaintiff's mother's request to hire Samz, and instructed defendant and the GAL to "personally speak with the bank and do whatever they could to save plaintiff's interest in the home." At a status hearing in December 2009, Samz "advised the judge that there was no danger of losing the home and that he could stop the foreclosure." Weaver and the GAL requested an opportunity to speak with Samz outside the courtroom. Upon returning, Samz "reversed his position, stating that the home would eventually be lost." Plaintiff's mother received the court's approval to "do whatever they could to save the house" and the court

ordered Weaver and the GAL to assist and contact the bank on plaintiff's behalf. The complaint alleges that "nothing was done," defendant fired Samz without explanation, and a foreclosure order was eventually entered.

¶ 13    Plaintiff alleged that defendant owed the plaintiff a fiduciary duty that included, among other things:

"(a) acting in the best interests of the Plaintiff including investing the estate funds in broad markets with low risk, avoidance of individual equities, seeking investments which generated income over appreciation, and investing in safe investments such as preferred stocks, government bonds, high-quality bonds, or commercial paper.

(b) undertaking actions to insure the growth of the minor's estate;

(c) avoiding actions which would result in a detriment to the Plaintiff and the estate."

¶ 14    The complaint asserted that defendant breached that duty by:

"(a) failing to act in the best interest of the minor Plaintiff and her estate;

(b) failing to prudently invest estate funds to promote growth of the estate as [defendant] affirmatively represented was its obligation;

(c) failing to insure that the estate did not lose value;

(d) continuing to undertake actions which resulted in the significant diminution of the value of the estate including the loss of Plaintiff's interest in real property; and

(e) undertaking actions for the purpose of generating fees to [defendant] and other businesses with which [defendant] did business, doing so at the expense of the plaintiff."

¶ 15    Plaintiff's second count against defendant alleged fraud in the inducement, asserting that defendant "represented that it would act in the Plaintiff's best interest in the management of

the estate which included investment of the estate funds toward the objective of the preservation and growth of the estate." Plaintiff alleged that defendant intended that she rely on such representations but "had no intention of acting in the best interest of Plaintiff and her estate but instead using the funds for its own benefit." The complaint alleged that this was "manifested by the significant losses to the estate."

¶ 16    Plaintiff's third and final count against defendant alleged gross negligence. The factual basis for this was identical to items (a) through (c) of count I. Plaintiff alleged that defendant's mismanagement of estate funds and failure to invest prudently was a gross breach of its duty to plaintiff.

¶ 17    On April 16, 2024, defendant filed a combined section 2-619.1 motion to dismiss plaintiff's complaint. 735 ILCS 5/2-619.1 (West 2022). Under section 2-619, defendant asserted that plaintiff's claims were barred by both *res judicata* and the statute of limitations. 735 ILCS 5/2-619 (West 2022). Under section 2-615, defendant argued that the complaint failed to state a claim of action upon which relief could be granted. 735 ILCS 5/2-615 (West 2022). The circuit court found that the parties in the instant action were the same as those involved in the annual approval of the estate's accounts. It also found that plaintiff's mother raised various concerns about the accounts with the court and, to the degree that she did not raise certain matters, those issues could have been raised at that time. As such, the circuit court held that *res judicata* applied and the case was barred. The circuit court dismissed the case on August 14, 2024, and plaintiff timely appealed to this court on September 10, 2024.

¶ 18                                      II. ANALYSIS

¶ 19    On appeal, plaintiff argues that the circuit court did not apply the appropriate standard in its consideration of defendant's motion to dismiss and that *res judicata* does not apply in this

case. Plaintiff does not address the arguments raised in defendant's motion to dismiss that plaintiff's claims are barred by the statute of limitations and that plaintiff failed to state a viable cause of action. We agree with the circuit court that the case is barred by *res judicata*.

¶ 20 Defendant's motion to dismiss was brought under section 2-619.1 of the Code of Civil Procedure, which allows a movant to combine motions to dismiss under sections 2-615 and 2-619 into a single motion. 735 ILCS 5/2-619.1 (West 2022). A section 2-619 motion to dismiss admits the legal sufficiency of the pleading but asserts an affirmative defense or other matter that avoids or defeats the claim. *Barber v. American Airlines, Inc.*, 241 Ill. 2d 450, 455 (2011). Dismissal on the basis that a cause of action is barred by a prior judgment, as with *res judicata*, falls under section 2-619(a)(4). See *Illinois Non-Profit Risk Management Ass'n v. Human Service Center of Southern Metro-East*, 378 Ill. App. 3d 713, 719 (2008). Although the motion to dismiss is before us in its entirety, we need only consider defendant's argument regarding *res judicata*, which was part of the section 2-619 portion of its motion. A section 2-619 motion takes all well-pleaded facts in the complaint as true, as well as all reasonable inferences gleaned from those facts. *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 18. "However, 'conclusions of law and conclusory factual allegations not supported by allegations of specific facts are not deemed admitted.' " *Hanks v. Cotler*, 2011 IL App (1st) 101088, ¶ 17 (citing *Purmal v. Robert N. Wadington & Associates*, 354 Ill. App. 3d 715, 720 (2004)). Dismissals pursuant to section 2-619 and matters of pure law such as whether a claim is barred by *res judicata* are both subject to *de novo* review. *Khan*, 2012 IL 112219, ¶ 18; *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 43. "*De novo* means that we perform the same analysis that a trial judge would perform." *Khan v. Fur Keeps Animal Rescue, Inc.*, 2021 IL App (1st) 182694, ¶ 25.

¶ 21 There are three elements that must be present for *res judicata* to bar a claim:

"(1) a court of competent jurisdiction rendered a final judgment on the merits, (2) the cause of action in the present proceeding is the same as the cause of action in the previous proceeding, and (3) the party asserting *res judicata* and the party against whom *res judicata* is asserted were parties to the previous action in which the judgment was entered, or else they are in privity with parties to the previous action." *Kanfer,* 2013 IL App (4th) 121144, ¶ 76.

¶ 22    Neither party disputes that the parties in the instant action are identical to those in the previous estate proceedings to which defendant referred in its motion to dismiss, nor does either party challenge the jurisdiction of the circuit court. Therefore, the only questions before us are whether the orders approving the annual accounts and closing the estatewere final judgments on the merits and whether the same cause of action is being raised again in the case before us.

¶ 23                              A. Final Judgment

¶ 24    Defendant's motion to dismiss asserted that the orders approving the estate's annual accountings, as well as the order approving the final accounting and closing the estate, all qualified as final judgments that could have been appealed at the time. Section 24-11 of the Probate Act of 1975 requires that the representative of the estate present accounts to the court showing receipts and disbursements since the previous accounting at least every three years or as frequently as the court orders. 755 ILCS 5/24-11(a) (West 2022). In the case before us, accounts were presented to and approved by the court annually. The Probate Act dictates that so long as all relevant parties are served at least 10 days before a hearing on such an accounting, that account is binding on the ward of the estate as approved by the court. 755 ILCS 5/24-11(b) (West 2022). The only exception to that rule is where there is "fraud, accident or mistake." *Id*.

¶ 25 Plaintiff addresses *Kanfer*, upon which the circuit court heavily relied in its order dismissing the petition, at some length in her brief. In *Kanfer,* the coexecutors of their deceased mother's will sought to surcharge the defendant, which had served as the guardian of the estate of the deceased while she was still living, but disabled. *Kanfer*, 2013 IL App (4th) 121144, ¶ 1. The issues presented in *Kanfer* were more numerous than those before us, but included among them was a claim that the defendant failed to implement an investment model to responsibly invest the ward's money, despite the court approving the estate's accountings over several years. *Id*. ¶ 85-91. *Kanfer* found that orders approving accountings are appealable under Illinois Supreme Court Rule 304(b)(1) as final judgments. *Id*. ¶ 89, Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016). Accordingly, the first element of *res judicata* is satisfied: there was a series of final judgments from a court of competent jurisdiction.

### B. Cause of Action

¶ 26 Plaintiff argues that, had plaintiff objected to the court's approval of one or more accountings, such objection would not constitute the same causes of action now before the court. Plaintiff cites *National Recovery Ltd. Partnership v. Pielet* for the assertion that "[a]s no 'cause of action' was asserted during the guardianship proceeding, there is no 'identity of causes of action' for *res judicata* purposes. *National Recovery Ltd. Partnership v. Pielet*, 306 Ill. App. 3d 686 (1999). However, this is not at all the holding or reasoning of *Pielet*. In *Pielet*, the court found that the previous action cited by the defendant regarded an assignment of debt that took place in 1994, while the case before it concerned an assignment in 1996, therefore the causes of action were different. *Id*. at 688.

¶ 27 Plaintiff does not detail the relevant legal standard used to determine whether causes of action are identical for the purposes of *res judicata*, but argues that the causes of action brought

in the instant case have specific pleading and proof requirements not applicable to objections to accountings, and that the evidence to prove those claims differed from that evidence which would have been relevant to earlier objections. Plaintiff supports this assertion with a cite to a case applying the "same evidence" test in 1988, as well as to other cases relying on that test. *Cangas v. Marcus Auto Lease Corp.*, 176 Ill. App. 3d 127, 130-31 (1988); see also *Pfeiffer v. William Wrigley Jr. Co.*, 139 Ill. App. 3d 320 (1985); *American National Bank & Trust Co. of Chicago v. Village of Libertyville*, 269 Ill. App. 3d 400 (1995). We need not describe or further concern ourselves with that test, as it was explicitly rejected by our supreme court in favor of the "transactional" test that was previously used side-by-side with the "same evidence" test. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 310-11 (1998).

¶ 28        Under the transactional test, "a claim is viewed in factual terms and considered coterminous with the transaction, regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; and regardless of the variations in the evidence needed to support the theories or rights." *Id*. at 309. Our supreme court adopted language stating that:

"(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar * * *, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a 'transaction' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a

convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id*. at 311-12.

*Kanfer* cited to *River Park* and this transactional test in holding that the plaintiff's new claims regarding mismanagement of the estate's investments concerned "the same 'group of operative facts' " as those orders approving accountings during the estate proceedings. *Kanfer*, 2013 IL App (4th) 121144, ¶ 90 (citing *River Park*, 184 Ill. 2d at 302). The same is true in this case: although plaintiff is using different legal theories, her new claims still concern the proper management of the estate's investments.

¶ 29 The *Kanfer* court further noted that there was nothing preventing objections about alleged mismanagement from being raised at the time. *Id*. *Kanfer* found that the provision in section 24-11 for instances of fraud, accident, or mistake is identical to the conditions under which a party can seek relief from a judgment against it under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2022)). Accordingly, a party must show "reasonable excuse for [not acting] within the appropriate time or that they were prevented from doing so by the fraud, act or concealment of the opposing party, accident, excusable mistake or one or more of the grounds traditionally relied upon for equitable relief from judgments." *Kanfer*, 2013 IL App (4th) 121144, ¶ 101.

¶ 30 Plaintiff argues that *Kanfer*'s reference to the language of section 24-11(b) and use of the direct comparison to section 2-1401 actually means that any claim related to fraud on the part of a defendant cannot be precluded by *res judicata*. *Id*. (citing *In re Estate of Moore*, 175 Ill. App. 3d 930-31 (1988) (interpreting the fraud, accident, or mistake provision by reference to the "quite similar" showing required by section 2-1401)). However, this interpretation cannot be squared with *Kanfer*, which establishes that it is only where fraud, accident, or excusable

mistake causes a party to fail to raise an issue that could have been raised, that matter is not barred by *res judicata*. *Id*. Here, although plaintiff alleges that defendant failed to act when informed of the mismanagement of the estate, and plaintiff alleges fraud in the inducement, she does not assert that any alleged fraud, accident, or mistake interfered with plaintiff's ability to raise an objection during the prior accounting proceedings.

¶ 31       Plaintiff asserts that "the issues of mismanagement of the account were brought to the attention of [defendant and the GAL], yet neither *** did anything about it, thus hamstringing [plaintiff] from seeking relief." Plaintiff asks:

> "[The GAL] refused to challenge the disbursements and expenditures and failure [*sic*] to defend the foreclosure despite repeated request [*sic*] from plaintiff's mother. How, then, does a minor assert a challenge to a disbursement when (a) the *guardian ad litem*, who is supposed to be acting in the best interest of the minor refuses to do so, and (b) when the 'trustee' bank undertook actions which continually caused damage to the estate and refused to assist in protecting a significant asset of the estate (the residence)?"

¶ 32       Plaintiff goes on to assert that "[t]here is no evidence that plaintiff did not bring the actions of [defendant] to the attention of the court, and in fact the only evidence is that she did, through her mother, to the guardian, the *guardian ad litem*, and the involved attorneys." No part of plaintiff's argument alleges fraud or accident, leaving only excusable mistake. When an individual is presented with a situation in which an attorney or party appointed to represent their child's interest is failing or refusing to do so, we cannot say that failing to bring that to the attention of the court or to confer with an attorney as to one's options is an excusable mistake. Illinois courts have recognized the need to protect the rights of those, including

minors, who are unable to enforce their own legal rights, but our legislature has not created and our courts have not identified any exception to *res judicata* applicable to minors or any others subject to legal disability. *Cload ex rel Cload v. West*, 328 Ill. App. 3d 946, 953-54 (2002). Alternatively, if the matter *were* brought to the court and the court wrongly declined to take action, that would properly have been the subject of a Rule 304(b) appeal of the accounting for the period during which such failure or refusal to act resulted in injury to plaintiff.

¶ 33     As we have affirmed on the basis of *res judicata*, we need not examine defendant's alternative theories regarding the statute of limitations and failure to state a cause of action.

¶ 34                    III. CONCLUSION

¶ 35     For the foregoing reasons, we affirm the circuit court's order.

¶ 36     Affirmed.